INTEX RECREATION CORP., Plaintiff,

v.

HASBRO, INC., Defendant.

No. CV 96–0533 ABC (MCX).

United States District Court,
C.D. California.

Feb. 20, 1998.

David Makous, Daniel DeCarlo, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, CA, for Plaintiff/Petitioner.

Monique Cordray, Robert Hillman, Fish & Richardson, Boston, MA, for Defendant/Respondent.

ORDER: Plaintiff's Motion for Summary Adjudication re:

(i) Invalidity of Claim 12 of U.S. Patent No. 5,575,738;

(ii) Invalidity of U.S. Design Patent No. D–366–085;

(iii) Non–Infringement of U.S. Design Patent No. D–366–085; and Plaintiff's Motion for Bifurcation

COLLINS, District Judge.

Plaintiff's Motions for Summary Adjudication re: (i) Invalidity of Claim 12 of U.S. Patent No. 5,575,738; (ii) Invalidity of U.S. Design Patent No. D–366–085; (iii) Non–Infringement of U.S. Design Patent No. D–366–085; and Plaintiff's Motion for Bifurcation came on regularly for hearing before this Court on January 12, 1998. After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED that Plaintiff's Motion is GRANTED IN PART and DENIED IN PART.

## I. Factual and Procedural Background

This case arises from Defendant–Counterclaimant Hasbro's allegations of patent infringement against Plain tiff-Counterdefendant Intex. Specifically, Hasbro has alleged that Intex's "Jump–O–Lene" product—an inflatable, trampoline-like toy—infringes upon Hasbro's design and utility Patents, which are embodied in Hasbro's "Playschool Moonbouncer" product—another inflatable, trampoline-like toy.

On November 24, 1997, Plaintiff INTEX RECREATION CORPORATION ("Intex") filed three motions: (1) Motion for Summary Adjudication re: Non–Infringement of Claim 10 of U.S. Patent No. 5,575,738; (2) Plaintiff's Motion for Summary Adjudication re: (i) Invalidity of Claim 12 of U.S. Patent No. 5,575,738; (ii) Invalidity of U.S. Design Patent No. D–366–085; (iii) Non–Infringement of U.S. Design Patent No. D–366–085; and (3) Motion for Bifurcation. On December 15, 1997, Defendant HASBRO, INC. ("Hasbro") filed its Opposition to each of Plaintiff's motions. Intex filed its Reply briefs on December 22, 1997.[1]

The instant Order addresses: (1) the validity of U.S. Patent No. D–366,085 (the " '085 patent") and whether the Jump–o–Lene infringes the design patent; and (2) the validity of claim 12 of U.S. Patent No. 5,575,738 (the " '738 Patent").

On June 12, 1995, Hasbro filed its applications for both the '738 patent and the '085 patent for the same device—an inflatable jumping toy for children comprised of an inflatable trampoline jumping base with an inflated circular sidewall. The same drawings were used for both the '085 design patent and the '738 utility patent. The '085 design patent issued in January 1996 and the '738 utility patent issued in November 1996.

## II. Discussion

### A. Summary Judgment Standard

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978). If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the

---

1. At the January 12, 1998 hearing, the Court requested that the parties file Supplemental Briefs as to the applicability of the doctrine of equivalents to the '085 patent. Hasbro filed its Supplemental Brief on January 20, 1998. Intex filed its Brief on January 26, 1998.

defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules; Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)). This means that, if the moving party has the burden of proof at trial, that party must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in that party's favor. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). Furthermore, the court must view the evidence presented to establish these elements "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the opponent has the burden of proof at trial, then the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. 2548. "Instead, ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ... [T]he adverse party's response ... *must set forth specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish an essential element to that party's case, and on which that party would bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson,* 477 U.S. at 252, 106

S.Ct. 2505. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 248, 106 S.Ct. 2505; *Griffeth v. Utah Power & Light Co.,* 226 F.2d 661, 669 (9th Cir.1955).

The standard for summary judgment in a patent case is no different; summary judgment is appropriate where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,* 731 F.2d 831 (Fed. Cir.1984) (summary judgment on issue of validity); *Townsend Eng'g Co. v. HiTec Co.,* 829 F.2d 1086, 1089 (Fed.Cir.1987) (summary judgment on issue of infringement).

### B. Analysis

Intex has moved for summary adjudication on three grounds. First, Intex contends that the '085 patent is invalid because the design is primarily functional rather than ornamental. Second, Intex argues that the Jump–o–Lene does not infringe the '085 patent. Finally, Intex asserts that both the '085 patent and the '738 patent are invalid based on obviousness. In its Opposition, Hasbro contends that genuine issues of material fact preclude summary adjudication because an ordinary observer could be deceived into believing the Jump–o–Lene is the same as the design claimed in the '085 patent.

#### 1. Non–Infringement of the '085 patent

"A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent." *Elmer v. ICC Fabricating, Inc.,* 67 F.3d 1571, 1577 (Fed.Cir. 1995). In *Gorham Co. v. White,* 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871), the Supreme Court established the test for design patent infringement: "[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

"*Gorham* sets forth the standard of infringement of an *ornamental design.*"

*Read Corp.*, 970 F.2d at 825 (emphasis added). Where, as in this case, however, "a design is composed of *functional as well as ornamental features*, to prove infringement a patent owner must establish that an ordinary person would be deceived by reason of the common features in the claimed an accused designs *which are ornamental.*" *Id.* (emphases added).

Thus, in this case, design patent infringement depends on: "(1) the similarity of the ornamental features of the [accused] device and the patented design, and (2) the likelihood that an ordinary person would be confused because of such ornamental similarity." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed.Cir.1992); *see also L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125 (Fed.Cir.1993) (noting that design patent infringement requires a showing that: (1) the accused design must be "substantially the same" as the patented design; and (2) the accused design must "appropriate the novelty that distinguished the patented design from the prior art").[2]

The similarity must be attributed to the features protected by the patent—the nonfunctional features that distinguish the patented device from the prior art. *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed.Cir.1984). "In analyzing the visual similarity, a court may only consider whether an ordinary consumer would be deceived by the nonfunctional aspects of the design patent." *Herbko*, 916 F.Supp. at 326 (citing *Elmer*, 67 F.3d at 1577). "[T]he accused design must appropriate the novel ornamental features of the patented design that distinguish it from the prior art." *Elmer*, 67 F.3d at 1577; *see also Litton*, 728 F.2d at 1444 (same). Thus, "even though the court compares two items through the eyes of the ordinary observer, it must nevertheless, to find infringement, attribute their similarity to the novelty which distinguishes the patented device from the prior art." *Litton*, 728 F.2d at 1444.

In this case, Intex contends that Hasbro has identified two points of novelty in the patented device which distinguish it from prior art. Intex points to: (1) the '085 patent's bottom wall consisting of "concentric rings"; and (2) the concentrically stacked rings which make up the sidewall. Plf's. Mot. at 25–26 & n.15. Hasbro, on the other hand, contends that the '085 patent's point of novelty is: "An enticing overinflated appearance embodied in the combination of a bottom portion, which consists of round inflatable rings, and a side portion of three round inflatable tubes, each having a smaller circumference than the outer bottom rings." [Second] Decl. of Charles Miga, ¶ 5.

In its Petition to Make Special ("PMS"), Hasbro indicates the points in the proposed patented device which are distinguishable from prior art. The PMS first notes that the "bottom wall" is formed from "three concentric sections having concentric circular seams." [Second] Decl. of David N. Makous, Exh. H at 238. The PMS also notes that the "side wall" is "defined by a plurality of concentric tubular sections which are positioned one above the other." *Id.* Hasbro's PMS specifically indicates the points of novelty which give the patented device its "ornamental appearance." *Id.*

The Court finds that Hasbro's statements in its PMS were made to convince the Patent and Trademark Office ("PTO") examiner that the claimed design met the statutory requirements of patentability. *See Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir.1997) (holding that statements made in an Information Disclosure Statement are binding on the patentee for purposes of claim interpretation and prosecution history estoppel). Thus, the Court rejects Hasbro's attempt to reformulate the points of novelty.

Nevertheless, the Court notes that the purported reformulation adopts the two

---

**2.** "Both tests, though often intertwined, must be satisfied in order to find infringement of a design patent." *Herbko Int'l, Inc. v. Gemmy Indus. Corp.*, 916 F.Supp. 322, 325 (S.D.N.Y.1996) (citing *Shelcore, Inc. v. Durham Indus., Inc.*, 745 F.2d 621, 628 n. 16 (Fed.Cir.1984)). Moreover, the test for infringement does not compare the commercial embodiments of the two products. Rather, the allegedly infringing product is compared only to the patented design. *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed.Cir.1995).

points of novelty asserted by Intex.[3] Thus, the Court finds that the bottom wall consisting of "three concentric sections" and the plurality of concentric stacked rings which make up the sidewall are the appropriate points of novelty for analysis.

■ The Court finds that the Jump–o–Lene does not infringe the first point of novelty—the bottom wall consisting of three concentric rings. The Jump–o–Lene and the '085 design are not substantially similar because an ordinary observer would not be induced into purchasing "one supposing it to be the other." *Gorham*, 81 U.S. (14 Wall.) at 528. A comparison of the bottom wall of the '085 design patent, *see* [Second] Makous Decl., Exh. G at 200 (Fig.3), and the bottom wall of the Jump–o–Lene, *see* [Second] Decl. of David Fisher, Exh. T at 90, reveals no substantial similarity of any ornamental features. The '085 patent illustrates three concentrically oriented inflatable circles. Although the Jump–o–Lene has an outer circle, the single inner circle consists of parallel inflatable seams. *See* [Second] Fisher Decl., ¶ 15(iv)A ("The appearance of the jumping base[—]a substantially flat surface with parallel lines ... looks entirely different than the concentric circles claimed in Figure 3 of the '085 Patent."). Thus, to the extent the bottom wall of the '085 patent is ornamental, it is not susceptible of confusion to the ordinary observer. *See Read Corp.*, 970 F.2d at 826 (noting that infringement requires "the likelihood that an ordinary person would be confused because of ... ornamental similarity"). Moreover, even if some confusion exist-ed in comparing the '085 patent and the Jump–o–Lene as a whole, when examining only the ornamental aspects of the design patent, it is evident that "an ordinary consumer would [not] be deceived by the nonfunctional aspects of the design patent." *Herbko*, 916 F.Supp. at 326; *see also Winner Int'l Corp. v. Wolo Mfg. Corp.*, 905 F.2d 375, 377 (Fed.Cir.1990) (noting that under the "point of novelty" approach, the court must focus on those aspects of the design patent which distinguish it from prior art).[4]

In its Supplemental Brief Hasbro contends, for the first time, that the doctrine of equivalents applies to the '085 patent. Because the Jump–o–Lene does not incorporate the '085 patent's ornamental features and because Hasbro did not raise this issue in its Opposition to Plaintiff's motion for summary adjudication, the court declines to apply the doctrine of equivalents to this case.

■ "While the doctrine of equivalents applies to design patent cases, it applies only when the accused product includes features equivalent to the novel claimed design features." *Sun Hill*, 48 F.3d at 1199 (citation omitted). "A patentee cannot invoke the doctrine to evade scrutiny of the point of novelty, because to do so would 'eviscerate the purpose of the 'point of novelty' approach, which is to focus on those aspects of a design which render the design different from prior art designs.' " *Id.* (quoting *Winner Int'l Corp. v. Wolo Mfg. Corp.*, 905 F.2d 375, 376 (Fed.Cir.1990)). Thus, the doctrine of equivalents does *not* apply when an ac-

---

3. The only difference between the two parties' formulation of the relevant point of novelty is Hasbro's language relating to the patented design's "enticing overinflated appearance." The Court declines to find the concept of "enticing" to be a patentable ornamental design. With respect to the "overinflated appearance," however, the Court finds that such appearance is "dictated solely by function" and is not ornamental. *See, Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1565 (Fed.Cir.1996); *see also* '738 patent specification, [Second] Makous Decl., Exh. E, at 57 ("The bottom wall has a thickness of at least approximately ten inches."); *id.* at 63 ("The bottom wall [is] preferably of circular configuration and concentrically oriented, and the compartments ... are preferably independently inflatable."); *id.* ("[B]ecause the bottom wall includes a plurality of independently inflatable compart-ments, the bottom wall will remain firm during bouncing and jumping activities and is further prevented from collapsing to a point where contact is made with a supporting surface there beneath."). For this reason, the Court finds that the bottom wall, rather than the bottom wall's "overinflated appearance," constitutes the appropriate point of novelty.

4. Because the Court finds that the Jump–o–Lene does not infringe the '085 patent based on the first point of novelty, the Court need not consider the second point of novelty. Moreover, because the Court concludes that the Jump–o–Lene does not infringe the '085 design patent, the Court need not consider the validity of that patent. *See Sun Hill*, 48 F.3d at 1199 (failing to address patent validity after finding no infringement).

cused product fails to incorporate the novel claimed features. *Id.; see also Litton,* 728 F.2d at 1444 (finding no design patent infringement without considering infringement under the doctrine of equivalents).

In this case, the Court has found that the Jump–o–Lene does not infringe the '085 patent. Because the Jump–o–Lene does not incorporate the '085 patent's ornamental features, the Court declines to apply the doctrine of equivalents. *See Litton,* 728 F.2d at 1444. Moreover, in its motion for summary adjudication, Intex presented evidence that the Jump–o–Lene did not infringe the '085 patent. Hasbro concedes, however, that it failed to raise the issue of design patent infringement under the doctrine of equivalents in its Opposition to Intex's motion. *See* Hasbro's Supp. Brief at 4. Hasbro's failure to present any evidence in Opposition to Hasbro's motion further precludes this Court from considering infringement of the '085 patent under the doctrine of equivalents.

For all these reasons, Plaintiff is entitled to summary adjudication with respect to non-infringement of the '085 patent.

### 2. Invalidity Based on Obviousness

Patent validity is a question of law. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Therefore, the Court may resolve the issue of validity on summary judgment.

A patent is presumed valid. 35 U.S.C. § 282 (1988). To succeed in its summary judgment motion on invalidity, Intex must demonstrate, by clear and convincing evidence, that the undisputed facts establish that the patent is invalid. *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1562 (Fed.Cir.1988). In this case, Intex contends that both claim 12 of the '738 utility patent and the '085 design patent as a whole are invalid on the basis of obviousness by prior art.

The test for determining the validity of a design patent issued under 35 U.S.C. § 171 is the same as the test for determining the validity of a utility patent under U.S.C. § 101. *Litton,* 728 F.2d at 1440. Thus, 35 U.S.C. § 103 applies to a determination of

the obviousness of either a design or a utility patent. *Id.* at 1441. Section 103 prohibits a patent from issuing when the "differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made."

A determination as to obviousness is based on four underlying factual inquiries: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations, if any, of nonobviousness. *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.,* 72 F.3d 1577, 1582 (Fed. Cir.1996); *see also Litton,* 728 F.2d at 1441 (same) (citing *Graham,* 383 U.S. at 17, 86 S.Ct. 684). "The determination of the ultimate question of obviousness is made from the viewpoint of a person of ordinary skill in the field of the patented design." *Hupp v. Siroflex of Am., Inc.,* 122 F.3d 1456, 1462 (Fed.Cir.1997). Secondary considerations include commercial success, long felt but unresolved needs, and failed attempts. *Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve,* 796 F.2d 443, 450 (Fed.Cir.1986).

#### a. Claim 12 of the '738 Patent

Intex argues that claim 12 of the '738 patent is invalid on the basis of obviousness by prior art.

Claim 12 of the '738 patent reads as follows:

12. An exercise and play apparatus comprising: an inflatable, substantially horizontally oriented bottom wall having an upper surface, a lower surface and a perimeter, the upper and lower surface being continuously spaced apart sufficient to generate a trampoline effect based on air pressure in said bottom wall; and an inflatable, substantially vertically oriented continuing sidewall connected about the bottom wall and defining an enclosure with the sidewall having a height and thickness selected to retain, as well as cushion the impact of, users jumping or bouncing on the upper surface of the bottom wall.

### (1) Scope and Content of the Prior Art

The first factual consideration is the scope and content of the prior art. Intex argues that claim 12 of the '738 patent is "extraordinarily broad" and captures "any pneumatic device with an inflatable base that one can jump on, topped with inflatable side walls." Plf's. Mot. at 29. Intex specifically alleges that claim 12 is obvious based on several references to prior art including:

(1) the Intex Aquarium Pool, *see* [Second] Fisher Decl., Exhs. E, F;

(2) U.S. Patent No. 3,130,816 (the " '816 patent") for a PNEUMATIC TRAMPOLINE issued April 28, 1964 to H.B. Wright, *See* [Second] Makous Decl., Ex. A;

(3) U.S. Patent No. 4,815,153 (the " '153 patent") for an INFLATABLE PLAY PEN issued March 28, 1989 to Blesser, et al. *See* [Second] Makous Decl., Exh. B; or

(4) "numerous types of inflatable bouncing toys, pools, rectangular inflatable lounges, and other inflatable devices which pre-date the invention disclosed in the '738 and '085 patents constitute prior art. *See* Plf's. Mot. at 27 (citing [Second] Fisher Decl. ¶ 10 A–F).

The Aquarium Pool is an inflatable product intended to be filled with water. Decl. of Charles Miga, ¶ 21. The Aquarium Pool is circular in form and has a sidewall of several circular chambers stacked on top of an inflated circular base. [Second] Fisher Decl. ¶ 10A(4). The Aquarium Pool has an inflatable bottom wall with an upper and lower surface. [Second] Fisher Decl. ¶ 10A(4)(ii). The Aquarium Pool has a bottom wall thickness from 1½ to 2 inches, *see* Decl. of Monique L. Cordray, Exh. 5, at 49, to four inches. [Second] Fisher Decl. ¶ 10A(4).

The '816 patent was issued for a round pneumatic trampoline. The '816 patent does not disclose any sidewall. Miga Decl. ¶ 19.

The '153 Patent is an inflatable play pen. The '153 patent discloses a partially inflatable, non-continuing sidewall with inflatable pillars and an inflatable ring interspersed with non-inflatable meshed areas. The '153 patent discloses that it has inflatable columns at its side. Miga Decl. ¶ 15 (citing [Second] Makous Decl., Exh. B (Fig.1)). The columns are separated by meshed areas. Miga Decl. ¶ 15. The '153 patent does not disclose the dimensions of the thickness of the bottom wall or the height of the sidewall. Miga Decl. ¶ 16.

The Intex rectangular lounges range in size from over 30 inches in width and over 80 inches in length. [Second] Fisher Decl. ¶ 10B. The inflated depth of the lounges varies between four and ten inches. [Second] Fisher Decl. ¶ 10B and Exh. L. The Intex Island Oasis is an inflatable product with a recessed center in which users may sit. [Second] Fisher Decl., 10C and Exh. N. Intex inflatable boats have a sidewall which is as much as twelve inches in height. The boats have an inflatable bottom of about four inches. [Second] Fisher Decl. ¶ 10D and Exh. C. Intex also has inflatable beds and lounges. [Second] Fisher Decl. ¶ 10E–F and Exhs. O, P.

For purposes of the instant motion, the Court deems that the aforementioned devices, as described, constitute the relevant scope and content of prior art.

### (2) Differences between the Claims and the Prior Art

The second factual inquiry is the differences between the claims and the prior art. *B.F. Goodrich,* 72 F.3d at 1582. The Court finds that significant differences exist between claim 12 of the '738 patent and the prior art.

The following objects identified as prior art do not constitute an "exercise and play apparatus" as required by the limitation of claim 12: the '153 patent (inflatable play pen for infants); the inflatable lounges; the Island Oasis; and the inflatable beds. None of these devices constitutes an "exercise apparatus."

The Court has previously noted that Intex's Aquarium Pool does not disclose claim 12's limitation requiring the "upper and lower surfaces … spaced apart sufficiently to generate a trampoline effect." September 19, 1997 Order, at 26. Plf's. Mot. at 29. The Court further finds that the following objects

identified as prior art, like the Aquarium Pool, do not have an upper and lower surface spaced apart sufficiently to generate a trampoline effect: the '816 patent (an actual trampoline); the '153 patent; the inflatable boats (only a four inch bottom); the Island Oasis (depth of bottom not disclosed); and the inflatable beds and lounges (same).

Finally, the following objects identified as prior art do not constitute an "inflatable, substantially vertically oriented continuing sidewall connected about the bottom wall and defining an enclosure with the sidewall having a height and thickness selected to retain, as well as cushion the impact of, users jumping or bouncing on the upper surface of the bottom wall": the '816 patent (no sidewall); the '153 patent (mesh sidewall); the rectangular (no sidewall); the Island Oasis (no sidewall); the inflatable beds (no sidewall).

### (3) Level of Ordinary Skill in the Pertinent Art

The third factual consideration is the level of ordinary skill in the pertinent art. *B.F. Goodrich*, 72 F.3d at 1582. Plaintiff contends that a person of ordinary skill in the pertinent art would be one "who is familiar with inflatable products and has a basic and rudimentary knowledge of the basic designs and construction of inflatable products." Plf's. Mot. at 27–28; *see also* [Second] Fisher Decl., ¶ 17 (noting that person skilled in the art is one "who has three to six years of experience working in the field of manufacturing of inflatable products and one who has a basic education and understanding of pneumatic (air) characteristics and the application of those characteristics to a range of pneumatic items"). Defendants contend that one of ordinary skill in the art "is a designer of bouncing toys." [Second] Miga Decl. ¶ 10.

Despite the parties' definitional differences, it appears that they essentially agree on a fairly low skill level in the art. The Court agrees with this proposition. *See Lyle/Carlstrom Associates v. Manhattan Store Interiors*, 635 F.Supp. 1371, 1376 (E.D.N.Y.) (rejecting suggestion that a specific finding of a level of skill in the art is necessary where the issue of what the subject matter of the prior art teaches "is not so complex that the court cannot distinguish the salient elements without expert testimony"), *aff'd*, 824 F.2d 977 (1987).

The Court has set forth the relevant factual considerations with respect to the scope and content of the prior art, the differences between claim 12 and the prior art and the appropriate level of ordinary skill in the pertinent art. Having done so, the Court finds that Intex has failed to show, by clear and convincing evidence, that claim 12 of the '738 patent is obvious based on the prior art.

Intex contends that reference to the Aquarium Pool alone is sufficient to render claim 12 obvious. Plf's. Mot. at 29. Specifically, Plaintiff contends that:

> it would have been obvious to one skilled in the art in 1994 to simply separate the lower layer from the top layer of the jumping surface with wider I-beams which would allow the bottom wall to inflate to a greater and deeper volume, enhancing the trampoline effect of the jumping surface. In other words, ... it would have been obvious for one skilled in the art to enhance the trampoline effect to any desired level by performing the basic, well known tasks identified above.

[Second] Fisher Decl. ¶ 21.

Defendant contends, however, that it "would not have been obvious for one of ordinary skill in the art of making bouncing toys to increase the depth of the base of the Aquarium Pool to acquire a trampoline effect." [Second] Miga Decl., ¶ 23. These two conflicting declarations demonstrate a genuine issue as to a material fact. Therefore, Plaintiff has failed to establish by clear and convincing evidence that claim 12 of the '738 patent is obvious based on the prior art. *See Avia*, 853 F.2d at 1562 (requiring clear and convincing evidence that the undisputed facts establish demonstrate the patent is invalid).

Plaintiff also contends that combining the teachings of the Aquarium Pool and the other available prior art demonstrates the obviousness of claim 12. Plf's. Mot. at 30. Here, too, Plaintiffs have failed to meet the "clear and convincing" threshold. Charles Miga states in his declaration: "One skilled in the art of making bouncing toys would not have been motivated to combine the teachings of a

play pen (the '153 patent) or a trampoline (the '816 patent) with a wading pool (Aquarium Pool) to make a trampoline apparatus." [Second] Miga Decl., ¶ 24. "The combination of the Aquarium Pool and the '153 patent does not teach the exercise apparatus limitation or the trampoline effect limitation." [Second] Miga Decl., ¶ 26. Moreover, the "combination of the Aquarium Pool with the '816 patent does not teach a bottom wall having a sufficient thickness to generate a trampoline effect." [Second] Miga Decl., ¶ 27.

For these reasons, the Court finds that Plaintiff has not met its burden of establishing by clear and convincing evidence that the prior art renders claim 12 obvious. Even if it did, however, the relevant secondary considerations further compel the conclusion that plaintiff is not entitled to summary adjudication of this claim.

### (4) Secondary Considerations

The final factual inquiry for the Court to analyze consists of the relevant secondary considerations. *B.F. Goodrich*, 72 F.3d at 1582.

In this case, Hasbro identifies a secondary factual consideration. It has presented evidence that Intex copied Hasbro's Moonbouncer. *See, e.g.*, Cordray Decl., Exh. 5, at 54 (noting that Hasbro's Moonbouncer was in the room in which Intex designed the Jump-o–Lene); *see also Panduit Corp. v. Dennison Mfg. Co.*, 774 F.2d 1082, 1099 (Fed.Cir.1985) ("That Dennison ... did not copy an prior art device, but found it necessary to copy the cable tie of the claims in suit, is equally strong evidence of non-obviousness.").

The Court acknowledges that claim 12 appears quite broad. Nevertheless, based on all the relevant factual inquiries, including the relevant secondary consideration, the Court concludes that Intex has failed to establish by clear and convincing evidence that differences between claim 12 of the '738 patent and the prior art are such that the

"subject matter as a whole would have been obvious at the time the invention was made." 35 U.S.C. § 103. Accordingly, Intex's Motion for Summary Adjudication is DENIED as to the invalidity of the '738 patent.

### b. The '085 Patent

Intex argues that the '085 patent is invalid on the basis of obviousness by prior art. As discussed above, the Court has determined that the Jump–o–Lene does not infringe Hasbro's '085 design patent. Accordingly, the Court has declined to determine the validity of the '085 patent based on functionality. For the same reason, the Court need not determine the validity of the '085 patent based on obviousness of the prior art.

### III. Conclusion

For all the reasons discussed above, the Court hereby ORDERS that Intex's Motion for Summary Adjudication is GRANTED in part and DENIED in part. Specifically, the Court enters summary adjudication that Intex's Jump–O–Lene does not infringe Hasbro's '085 design patent. The Court DENIES Intex's motion for summary judgment with respect to its claim that the '738 patent is invalid based on the obviousness of the prior art. The Court's holdings make it unnecessary to determine the validity of the '085 patent based on either functionality or the obviousness of the prior art.[5]

---

5. The Court also hereby DENIES Intex's Motion to Bifurcate Trial of Liability and Damages Issues. Although the Court may allow the presentation of evidence in two phases (liability and damages), the Court will not empanel two juries in this matter. The final decision as to the presentation of the trial of this matter will be made at the Pre–Trial Conference.

Additionally, the Court notes that Plaintiffs' Objections to the Magistrate Judge's Discovery Ruling, which sought review of those rulings, is now moot.