**E–PASS TECHNOLOGIES, INC., Plaintiff,**

v.

**3COM CORPORATION a/k/a 3Com, Inc. and Palm, Inc., Defendant.**

**No. C–00–2255–DLJ.**

United States District Court, N.D. California.

Aug. 12, 2002.

Mark C. Dosker, Graham & James LLP, San Francisco, CA, Valerie C. West, Valerie C. West Law Offices, Los Angeles, CA, Stephen N. Weiss, Gregory J. Fleesler, Mark N. Parry, Kimberly Klein, Moses & Singer LLP, New York, NY, Joseph A. Meckes, Squire Sanders & Dempsey LLP, San Francisco, CA, for E–Pass Technologies, Inc., Plaintiff.

Bradley J. Hulbert, Leif R. Sigmond, Jr., Sean M. Sullivan, Anthoula Pomrening, Nicole A. Fiorella, McDonnell Boehnen Hulbert & Berghoff, Chicago, IL, John P. Bovich, Crosby Heafey Roach & May, San Francisco, CA, for 3Com, Inc., Palm, Inc., defendants.

## ORDER

JENSEN, District Judge.

Defendant 3Com, Inc. ("3Com") has moved for summary judgment for literal non-infringement of the '311 patent, owned by plaintiff E–Pass Technologies, Inc. ("E–Pass"). The parties filed cross-motions for summary judgment on the issue of infringement under the doctrine of equivalents. Having considered the papers submitted, the record in this case, and the applicable law, the Court hereby DENIES plaintiff's motion and GRANTS defendant's motion.

## I. BACKGROUND

A. *Factual Background and Procedural History*

This is a patent infringement case involving a single patent covering a system for simplifying the use of various cards, such as credit cards, check cards, and identity cards. U.S. Patent No. 5,276,311 (the " '311 patent"), entitled "Method and Device for Simplifying the Use of a Plurality of Credit Cards, or the Like," describes a method and device for storing information from various individual cards in a single electronic multi-function card (the "EMFC"), allowing the user the convenience of having to carry only the single multi-function card on her person. All data stored is protected by a security code and can only be recalled by the user with the previously identified personal code when any particular stored card is required for a transaction.

The '311 patent describes "[p]articular advantages ... provided by the simple form of the electronic multi-function card which has the outer dimensions of usual credit or check cards ...." ('996 patent, col. 3, lns. 17–21). First, the EMFC serves the purpose of convenience by "simplifying the use of a plurality of credit cards, check cards, customer cards, or the like ...." (*Id.*, Abstract.) "[T]he user only needs, and is required to carry about, a single card ...." (*Id.*, col. 1, lns. 64–66.) Thus, the EMFC substitutes for the "plurality of special or single purpose cards" carried about; data shows that the average American citizen carries approximately 16 cards. (*Id.*, col. 1, lns. 31–37.) Second, the EMFC can be easily converted "into a specific card ...." (*Id.*, col. 2, lns. 14–21.) Technologically, it is easily possible to "accommodate even very extensive electronic storages in a card-like very flat housing ...." (*Id.*, col. 2, lns. 22–25.) Third, the EMFC incorporates safety features that "guarantee that there will not exist any risk of abusive use or forgery in case of loss ...." (*Id.*, col. 1, lns. 65–68.)

In the *Markman* hearing, all parties agreed that the size of the card was a central issue requiring claim construction by the Court. *See E–Pass Techs., Inc. v. 3Com, Inc.*, 177 F.Supp.2d 1033, 1039–40 (N.D.Cal.2001). E–Pass argued that the EMFC's size should be construed as "pocket sized." *E–Pass Techs.* 177 F.Supp.2d at 1040. 3Com, on the other hand, construed EMFC to mean "a flat piece of plastic having the outer dimensions of a usual credit card ...." *Id.* On

December 5, 2000, this Court construed "electronic multi-function card" to mean "[a] device having the width and outer dimensions of a standard credit card with an embedded electronic circuit allowing for the conversion of the card to the form and function of at least two different single-purpose cards." *Id.* at 1043. The Court arrived at its construction in part by reviewing all the intrinsic evidence as well as some extrinsic evidence, including existing protocols establishing a standardized size for credit cards and check cards, as well as the patentee's deposition testimony and his application for a German patent. *Id.* at 1041–43. The Court concluded that the EMFC must be the size of a standard credit card if it is to serve as a substitute for a plurality of cards that includes check cards and credit cards, a purpose repeatedly alluded to throughout the '311 patent. *See id.* at 1040–41.

The accused devices, the Palm VII and Palm VIIx, "are used primarily for storing and organizing personal information," which may include information contained on items such as credit cards, customer cards, identity cards, documents, etc. (Def. Mot. at 2–3.) Palm's devices have a width of 3.25 inches, a height of 5.25 inches, and a thickness of 0.75 inches. *Id.* at 6–7. A standard credit card has "a length of 3.375 inches, a height of 2.2125 inches, and a thickness of 0.030 inches." *See E–Pass Techs.,* 177 F.Supp.2d at 1042.

### B. *Legal Standard*

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(e).

Summary judgment is a procedural matter not unique to patent law, and must therefore be decided by applying the law of the relevant regional circuit. *See Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1278 (Fed.Cir.1995). Once "the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *T.W. Elec. Service,* 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *see also Ting v. United States,* 927 F.2d 1504, 1509 (9th Cir.1991). The party who will have the burden of proof must persuade the Court that it will have sufficient admissible evidence to justify going to trial. The standard for judging a motion for summary judgment is the same standard used to judge a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Patent infringement analysis consists of a two-step process. *See Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454

(Fed.Cir.1998). In the first step, the court determines the appropriate scope and meaning of the patent in a process known as claim construction. *Markman v. Westview Instruments Inc.*, 517 U.S. 370, 371–73, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The second step involves comparing the properly interpreted claim to the accused's device to determine whether infringement exists. *See Markman v. Westview Instruments Inc.*, 52 F.3d 967 (Fed.Cir.1995).

"[W]hether the properly construed claims read on the accused device—is a question of fact." *Pitney Bowes, Inc. v. Hewlett–Packard Company*, 182 F.3d 1298, 1304 (Fed.Cir.1999) (citing *Mannesmann Demag Corp. v. Engineered Metal Prods., Co.*, 793 F.2d 1279, 1282 (Fed.Cir. 1986)). "[S]ummary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims." *Id.* (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). Where "the parties do not dispute any relevant facts regarding the accused product but disagree over which of two possible meanings of [a claim] is the proper one, the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed.Cir.1996).

"Although whether the properly construed claims cover the accused device, either literally or under the doctrine of equivalents, is a question of fact, summary judgment of noninfringement is appropriate when, drawing all reasonable inferences in favor of the patentee, no reasonable jury could find that every limitation of the construed claim exists in the accused device." *GTE Wireless, Inc. v. Qualcomm, Inc.*, 188 F.Supp.2d 1201, 1213 (S.D.Cal.2002) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

## II. DISCUSSION

3Com argues that this Court's "credit card size" construction of the term "multi-function card" renders it impossible for any reasonable jury to find that 3Com's Palm devices infringe the '311 patent, either literally or under the doctrine of equivalents. (Def. Mot. at 14.) E–Pass, too, has moved for summary judgment, contending that "no jury can conclude that the Palm devices are not equivalents of the EMFC." (Pl. Mot. at 4.) E–Pass argues that 3Com's "wallet sized" device "perform[s] the same function as the EMFC, in the same way as the EMFC, to achieve the same result as the EMFC." (Pl. Mot. at 4.)

■ As an initial matter, inasmuch as the accused devises were not included in the previously filed infringement claims for this case, E–Pass asserts a right to "amend its infringement chart to include the Palm V and other Palm devices." (Pl. Mot. at 3). E–Pass may not reserve a right that it does not have. Local Rule 3–7 allows amendment or modification of the disclosed asserted contentions listed in the claim chart only by order of the court. This Court will not allow amendment of the claim chart at this late stage. *See Atmel Corp. v. Information Storage Devices Inc.*, 1998 WL 775115 (N.D.Cal.1998) (stating that "the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction.") In any event, even if E–Pass were permitted to add other Palm devices to its claim chart, for the reasons articulated in Sections II A & B of this Order, there would still be no infringement.

A. *Literal Infringement of the '311 Patent.*

■ Literal infringement of a claim requires that "every limitation recited in the

**1162**

claim appear in the accused device." *Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed.Cir.1996). "If even one limitation is missing or not met as claimed, there is no literal infringement." *Mas–Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed.Cir.1998).

In the December 5, 2001 claim construction order, this Court construed the EMFC in the '311 patent as "a device having the width and outer dimensions of a standard credit card." *E–Pass Techs., Inc.*, 177 F.Supp.2d at 1043. In order for 3Com to have literally infringed E–Pass' patent, all the patent specifications, including the credit card size structural limitation, must read "exactly" on 3Com's devices. *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir.1995) (citing *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed.Cir.1990)).

■ There is no question that the Court's "size" limitation does not literally read onto 3Com's Palm devices. In fact, E–Pass unequivocally concedes that the EMFC and the accused Palm devices differ in size. (Pl. Mot. at 3.) Palm's accused devices have a width of 3.25 inches, a height of 5.25 inches, and a thickness of 0.75 inches. (Def. Mot. at 6–7.) Standard credit cards, on the other hand, have "a length of 3.375 inches, a height of 2.2125 inches, and a thickness of 0.030 inches (with tolerances of +–0.003 inches)." *E–Pass Techs.*, 177 F.Supp.2d at 1042. The accused devices have "a volume 58 times larger, and a thickness 25 times greater than a credit card." (Def. Mot. at 13.)

The Court finds that because the accused devices do not meet the credit card size limitation, there is no genuine issue of material fact remaining, and no reasonable jury could find that 3Com's devices literally infringe the '311 patent.

**B.** *Infringement of the '311 Patent Under the Doctrine of Equivalents*

■ "An accused product that does not literally infringe may infringe under the doctrine of equivalents if 'it performs substantially the same function in substantially the same way to obtain the same result.'" *Southwall Techs.*, 54 F.3d at 1579 (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)). "Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Equivalence also requires that the accused product is not substantially different from the claims of the patent. *Id.* at 35, 117 S.Ct. 1040. Analysis of the role played by each element of the specific patent claim will "inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." *Id.* at 41, 117 S.Ct. 1040.

■ Plaintiff relies upon the argument that "the Palm devices perform the same function, in the same way, to achieve the same result as the EMFC." (Pl. Mot. at 1–8.) For E–Pass to succeed, the Palm devices must have an equivalent counterpart to *every* claim aspect of the EMFC, including the credit card size element. *See WarnerJenkinson Co.*, 520 U.S. at 29, 117 S.Ct. 1040 (emphasis added). This "all elements" rule prevents a patentee from using an equivalence argument to enlarge the scope of her patent by ignoring specific claim limitations. *See id.* at 39–40, 117 S.Ct. 1040.

According to this Court's claim construction, the function of the EMFC is to simplify the use of single purpose cards by allowing a user to "discard all the various individual credit card size cards she carries about, and in their place, substitute those cards with one similarly sized card." *E-Pass Techs., Inc.,* 177 F.Supp.2d at 1041. The Palm devices, which have 58 times the volume and are 25 times thicker than a single credit card, are even more cumbersome than the 16 cards carried by the average American citizen. Defendant's devices, therefore, do not eliminate the bulk of the usual assortment of single-purpose cards.

E–Pass further contends that the capability to store data sets for individual cards, documents, and other items of both the accused devices and the EMFC, "enabl[es] these devices to substitute for both a wallet and for two or more wallet items." (Pl. Mot. at 2.) While the two devices may perform functions that are similar, E–Pass' argument is fatally flawed. As the Court construed it, the EMFC functions as a substitute for "a plurality of data sources," not wallets. *See* (the '996 Patent, col. 10, 54–70). The Court rejects E–Pass' "wallet size" construction of the EMFC's size limitation. *See* (Pl. Mot. at 2–3). Plaintiff's new terminology bears a striking resemblance to the "pocket size" description already rejected by this Court. *See E–Pass Techs.,* 177 F.Supp.2d at 1043. The observation that "there is no such thing as a standard 'pocket size,'" is equally applicable to wallets. *See id.* Furthermore, as 3Com correctly notes, E–Pass' proposed "pocket sized" and "wallet sized" constructions are totally unsupported by the intrinsic and extrinsic evidence. *See* (Def. Opp. to Pl. Mot. at 1–2.)

E–Pass also asserts that the way the Palm devices substitute for credit cards is substantially similar to the patented method. (Pl. Mot. at 3.) Infringement allegedly occurred when 3Com's executives, Mr. Yankowski and Mr. Solomon, demonstrated "eWallet," a proposed 3Com system for converting a Palm device into a "wallet substitute." *Id.* at 5, 7–8. Similarly, E–Pass claims that 3Com's devices infringe because there is an independent company which currently sells software that enables the Palm devices to conduct credit card transactions in a way similar to that described in the patent. (Weiss Decl. at Exh. 1.) As an evidentiary obstacle, E–Pass has not proven that eWallet software has ever been used on the accused Palm devices, or on any devices at all for that matter. Moreover, even if a Palm device containing eWallet software could be connected with someone's eWallet compatible device, defendant would still not have infringed because the '311 patent describes a credit card sized device that substitutes for a "plurality of cards," not wallets.

As previously stated, "[t]he word 'card,' ... used over 280 times in the patent," must be interpreted consistently. *E–Pass Techs., Inc.,* 177 F.Supp.2d at 1041; *see Fonar Corp. v. Johnson & Johnson,* 821 F.2d 627, 632 (Fed.Cir.1987). "A patentee may not proffer an interpretation for the purposes of litigation that would alter the indisputable public record consisting of the claims, the specification, and the prosecution history ...." *Southwall Techs.,* 54 F.3d at 1578. To hold that 3Com's devices are equivalent to the size element of the '311 patent as construed by the Court would vitiate that limitation because the EMFC's size is central to the patent. "If a theory of equivalence would vitiate a claim limitation ... there can be no infringement under the doctrine of equivalents as a matter of law." *Tronzo v. Biomet, Inc.,* 156 F.3d 1154, 1160 (Fed.Cir. 1998).

Furthermore, E–Pass cannot rely on a narrow construction of the word "card" in

the patent to distinguish its device from prior art and later encourage an interpretation that is so broad that "card" is read entirely out of the patent. "Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers." *Southwall Techs.,* 54 F.3d at 1576; *see also Sage Products, Inc. v. Devon Industries, Inc.,* 126 F.3d 1420, 1425 (Fed.Cir.1997). In *Sage,* the Court held that the patentee should have sought claims with fewer structural encumbrances "if [the patentee] desired broad patent protection for any container that performed a function similar to its claimed container . . . ." *Sage Products,* 126 F.3d at 1425.

3Com has introduced evidence showing that E–Pass' broad construction of the EMFC would indeed cover prior art, such as the wallet-sized Sharp Wizard, which "was capable of storing and displaying transferred data from credit cards, debit cards, and identification cards, such as driver's licenses and passports," and "had the option of protecting access to all of this stored data by assigning a secret code to the organizer." (Def. Opp'n at 8; Tovey Decl. at Exh. B, pp. 99, 101–02, 132, 135.) Notably, the Sharp Wizard predates the filing of the '311 patent application. If E–Pass were correct that the '311 patent could be enforced against wallet-sized devices, then the patent would arguably be invalidated by prior art.

■ Shifting away from the function-way-result test, E–Pass also invokes the "insubstantial difference" test for patent infringement, asserting that 3Com's device infringes because "[t]he size difference is immaterial . . . ." (Pl. Mot. at 9.) "The doctrine of equivalents enables a patent owner to prove infringement, despite a lack of literal infringement, where the differences between the claimed product and the accused product are insubstantial." *General Mills, Inc. v. Hunt–Wesson, Inc.,* 103 F.3d 978, (Fed.Cir.1997). E–Pass argues that its not the size of the device that matters, but how you use it. Contrary to E–Pass' argument, size does matter. "The doctrine of equivalents cannot be used to erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.'" *Conopco, Inc. v. May Dep't Stores Co.,* 46 F.3d 1556, 1562 (Fed.Cir. 1994) (internal citations omitted); *see also Athletic Alternatives, Inc.,* 73 F.3d at 1582 (quoting *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.,* 822 F.2d 1528, 1532 (Fed.Cir.1987)).

■ E–Pass emphasizes the purpose of convenience shared by both devices, contending that 3Com's product, like the EMFC, results in conveniently storing data sets from multiple single purpose cards. While this may be true, it does not change the fact that the '311 method patent is structurally limited to actions performed on the credit card sized EMFC. "Only if an accused product contains specific structure which meets all limitations of an asserted claim directed to structure, at least equivalently, can that product infringe under the doctrine of equivalents." *Southwall Techs.,* 54 F.3d at 1579. Such adherence to structural limitations can apply equally to method and device claims. *See Moleculon Research Corp. v. CBS, Inc.,* 872 F.2d 407, 409 (Fed.Cir.1989) (holding that plaintiff could not use the doctrine of equivalents to "read[ ] the number of cubelets and their corresponding engagement/rotation out of every step of the claim."). A structural limitation on a method claim is not absolute, but "depends on the language of the claim, the specification, prosecution history, and other claims." *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1271 (Fed.Cir. 1986). As stated before, the size of the card is a structural limitation that is central to the very essence and purpose of the '311 patent—substitutability.

3Com asserts that its devices cannot possibly "substitute" for credit cards and the like because they cannot be swiped at an ATM machine or a gas pump. (Def. Mot. at 13) In response, E–Pass contends that the EMFC lacks a magnetic strip, thus preventing it, too, from fully functioning as a substitute. (Pl. Mot. at 6.) E–Pass misses the point. The comparison to be made is not between 3Com's device and E–Pass' device as built, but between 3Com's device and the claims in the '311 patent. When analyzing whether a device infringes a patent, the Court must compare the accused device with the patent language, not the "commercial embodiments of the two products." *Intex Recreation Corp. v. Hasbro, Inc.*, 3 F.Supp.2d 1102, 1106 n. 2 (C.D.Cal.1998) (citing *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed.Cir.1995)). Here, the patent clearly states that the EMFC is intended to serve as a substitute for "a plurality of data sources such as credit cards, check cards, customer cards, [and] identity cards . . . ." ('311 Patent, col. 10, lines 55–58.) Because 3Com's product cannot be swiped like a credit card, in part because its size prevents it from being inserted into the card slot of machines like gas pumps, pay phones, and ATMs, it cannot serve as a "substitute" as contemplated by the patent and is therefore substantially different. That the owner of the '311 patent has built a device that cannot, itself, be used as a true substitute only suggests that *that* device does not conform with the patent.

Because finding that the size of 3Com's device is equivalent to a credit card size card would vitiate the size limitation in the '311 patent, the Court finds that no reasonable jury could find that the size of 3Com's Palm devices are the equivalent to the patented EMFC. E–Pass has failed to prove that its patent is infringed under the doctrine of equivalents by the accused devices of 3Com.

### III. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS 3Com's motion for summary judgment for non-infringement both literally and under the doctrine of equivalents.

E–Pass' motion for summary judgment for infringement under the doctrine of equivalents is DENIED.

IT IS SO ORDERED

### ORDER

Based on the Court's August 12, 2002 order, defendant's motion for summary judgment on all claims of the '311 patent is GRANTED.

IT IS SO ORDERED