**LG ELECTRONICS INC., Plaintiff and Counterdefendant,**

v.

**Q–LITY COMPUTER INC., Quanta Computer Inc., and Quanta Computer USA, Inc., Defendants and Counterclaimants.**

**LG Electronics Inc., Plaintiff and Counterdefendant,**

v.

**Asustek Computer Inc. and Asus Computer International Inc., Defendants and Counterclaimants.**

**LG Electronics Inc., Plaintiff and Counterdefendant,**

v.

**Bizcom Electronics, Inc., Compal Electronics, Inc., and Sceptre Technologies, Inc., Defendants and Counterclaimants.**

**LG Electronics Inc., Plaintiff and Counterdefendant,**

v.

**Everex Systems, Inc., Defendant and Counterclaimant.**

**LG Electronics Inc., Plaintiff and Counterdefendant,**

v.

**First International Computer, Inc. and First International Computer Of America, Inc., Defendants and Counterclaimants.**

Nos. C–01–0326 CW (EDL), C–01–1375 CW (EDL), C–01–1552 CW (EDL), C–01–1594 CW (EDL), C–01–2187 CW (EDL).

United States District Court, N.D. California.

Dec. 4, 2002.

Matthew T. Powers, Skjerven Morrill LLP, San Jose, CA, Thomas B. Kenworthy, Scott A. Stempel, Collin W. Park, Morgan,

Lewis & Bockius LLP, Nathan Wayne McCutcheon, Morgan Lewis Bockius, Washington, DC, David Morris, Morgan, Lewis & Bockius LLP, Washington, DC, for plaintiff.

Terry D. Garnett, Vincent K. Yipp, Maxwell A. Fox, Peter J. Wied, Sang N. Dang, Alschuler, Grossman, Stein & Kahan LLP, for defendants Q-Lity Computer, Inc., Quanta Computer, Inc., and Computer USA, Inc.

Ronald S. Lemieux, Michael E. Sobel, John V. Komar, Vidya R. Bhakar, Squire, Sanders & Dempsey L.L.P., Palo Alto, CA, Quoc–Huy D. Do, Squire, Sanders & Dempsey LLP, San Francisco, CA, John Anson Burlingame, Squire, Sanders & Dempsey, Washington, DC, James Mason Smith, Squire, Sanders & Dempsey, Palo Alto, CA, Adam R. Fox, Squire, Sanders & Dempsey, LLP, Los Angeles, CA, for defendants Asustek Computer, Inc., ASUS Computer International.

Daniel Lewis Hawes, Hawes & Associates, New Baltimore, VA, for defendant CBM Computers.

Tyler G. Newby, Fenwick & West LLP, Mountain View, CA, for Apple Computer Inc.

## ORDER

LAPORTE, United States Magistrate Judge.

In these related patent actions brought by LG Electronics Inc. ("LGE") against various defendants, numerous motions have been referred to this Court for resolution. First, Apple Computer Inc. ("Apple") moves to intervene for the limited purpose of opposing LGE's motion to amend its infringement contentions to include Apple products. For the reasons set forth below, this motion is granted.

Second, LGE moves to amend its Patent Local Rule 3–6(a) disclosures. For the reasons set forth below, this motion is granted in part, and denied in part.

Third, LGE moves to compel discovery on various topics. In opposition to part of LGE's motion to compel, Apple moves for a protective order against the disclosure of confidential information by Q–Lity Computer, Inc., Quanta Computer, Inc., and Quanta Computer USA, Inc. (collectively, "Quanta") and moves to quash LGE's subpoena duces tecum against Apple. Apple has also filed a motion for a protective order and motion to quash LGE's deposition subpoena against

Apple. For the reasons set forth below, LGE's motion to compel discovery with respect to Apple products is denied, and Apple's motions for protective order and to quash are granted. LGE's motion to compel discovery on the remaining topics is taken under submission until after Judge Wilken rules on the pending motions for summary judgment filed by First International Computer, Inc. and First International Computer of America, Inc. (jointly, "FIC") and Compal Electronics, Inc., Bizcom Electronics, Inc., and Sceptre Technologies, Inc. (collectively, "Compal").

## I. BACKGROUND

LGE asserts six patents against the defendants in these cases: United States Patent Nos. 4,918,645 (the '645 patent), 4,939,641 (the '641 patent), 4,926,419 (the '419 patent), 5,077,733 (the '733 patent), and 5,379,379 (the '379 patent). On October 26, 2001, LGE served its Patent Local Rule 3–1 initial disclosures, which identified the allegedly infringing products of the defendants that LGE had been able to identify by that time. (Morris Decl. in Support of Motion to Amend ¶ 2.) On December 28, 2001, LGE served supplemental Patent Local Rule 3–1 disclosures, in which it identified additional allegedly infringing products. (Id.)

Defendants Asustek Computer, Inc. and Asus Computer International, Inc. (jointly, "Asustek") and Quanta moved for summary judgment that a cross license agreement between LGE and Intel precluded LGE from seeking damages for infringement with respect to five of the six patents at issue. Defendant Everex Systems, Inc. ("Everex") joined in the motions for summary judgment filed by Asustek and Quanta. LGE opposed the motions and filed a cross-motion for summary judgment that the LGE–Intel Cross License Agreement ("LGE–Intel Cross License") did not exhaust LGE's rights in the five patents and did not create an implied license between LGE and Intel's downstream customers. On August 20, 2002, the Honorable Claudia Wilken granted defendants' motions for summary judgment, and denied LGE's cross-motion.

According to Judge Wilken's summary judgment order:

On September 7, 2000, LGE entered into the LGE–Intel License. Pursuant to this agreement, Intel paid to LGE a certain

sum of money and agreed to provide an additional amount in discounts in future purchases. The LGE–Intel License gives Intel the right to manufacture products that would otherwise infringe any of the patents owned by LGE, including the patents at issue here. The LGE–Intel License expressly disclaims any implied license to Intel customers who combine products covered by the LGE–Intel License with non-Intel products. Several days prior to entering into the LGE–Intel License, Intel sent a letter to all its customers, including Defendants, informing them that its license with LGE "does not extend, expressly or by implication to any product that you may make by combining an Intel product with any non-Intel product."

Intel produces microprocessors and chipsets that are covered by the LGE–Intel License. Defendants purchase these microprocessors and chipsets from Intel or its authorized distributors and install the licensed Intel microprocessors and chipsets into computers that they manufacture [footnote omitted], LGE contends that many of these computers infringe its patents. A number of microprocessors and chipsets disclosed in LGE's infringement contentions are manufactured by Intel. LGE does not contend that the Intel microprocessors and chipsets, alone, infringe any of the patents at issue here. Rather, LGE's claim charts reveal that the licensed Intel products meet many of the limitations of the patents, and when combined with other components in the accused devices, infringe five of its patents.

(Summary Judgment Order at 4–5.)

Applying the doctrine of patent exhaustion, Judge Wilken granted defendants' motion for summary judgment, agreeing with their argument that "because LGE licensed to Intel the right to practice LGE's patents and sell products embodying its patents—and Intel's production and sale of its microprocessors and chipsets are covered by this agreement—LGE forfeited its potential infringement claims against those who legitimately purchase and use the Intel microprocessor and chipset." (*Id.* at 9.) "Consequently, the LGE–Intel License not only exhausted LGE's rights in the Licensed Products, but

also exhausted LGE's right to claim infringement against any device that uses the licensed microprocessor and chipset for its intended use in the manner recommended by Intel." (*Id.* at 10.) The Court also noted, however, that "[t]o the extent that the allegedly infringing products do not use Intel microprocessors and chipsets that are covered by the LGE–Intel License, the patent exhaustion doctrine is not applicable." (*Id.* at 16 n. 4.)

FIC and Compal have also filed motions for partial summary judgment before Judge Wilken, and LGE has filed a cross-motion for summary judgment, all of which are still pending. On November 20, Judge Wilken issued an order requesting further briefing on those motions, and indicated that she is treating LGE's cross-motion for summary judgment as a motion for reconsideration of her August 20 summary judgment opinion.

Judge Wilken also issued a claim construction order on August 20. On September 19, 2002, a month after Judge Wilken's summary judgment and claim construction orders, LGE served its Final Infringement Contentions, pursuant to Patent Local Rule 3–6(a), for the '645, '641, '733, '379, and '509 patents. (Morris Decl. in Support of Motion to Amend, Ex. 10.) LGE has identified the products of the defendants that it believes infringe each patent. (*Id.*) In Table 1 of the contentions for each patent, LGE identifies the products that it previously has notified the defendants as allegedly infringing. (*Id.*) In Table 2 of the contentions for each patent, LGE identifies for the first time additional products that it believes infringe its patents. (*Id.*) LGE now seeks permission after the fact to amend its Patent Local Rule 3–6(a) contentions to include its infringement allegations against these newly identified products.

## II. DISCUSSION

### A. Apple.'s Motion for Leave to Intervene for the Limited Purpose of Opposing LG Electronics, Inc.'s Motion to Amend its Infringement Contentions to Include Apple Products

Some of the disputes currently before the Court involve LGE's attempt to amend its

patent infringement contentions to add products made by Quanta for Apple ("Apple products"). Accordingly, the Court will begin by addressing Apple's motion to intervene. Apple seeks leave to intervene, pursuant to Rules 24(a)(2) and 24(b)(2) of the Federal Rules of Civil Procedure, solely for the limited purpose of opposing LGE's motion to amend its infringement contentions to include Apple products.

■ Rule 24(a)(2) of the Federal Rules of Civil Procedure provides:

> Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 24(a) is construed liberally in favor of potential intervenors. *Southwest Center for Biological Diversity v. Berg,* 268 F.3d 810, 818 (9th Cir.2001) (citing *Forest Conservation Council v. United States Forest Service,* 66 F.3d 1489, 1493 (9th Cir.1995)). "By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related claims; at the same time, we allow an additional interested party to express its views before the court." *Forest Conservation Council,* 66 F.3d at 1496 n. 8 (emphasis in original). A nonparty seeking to intervene need not intervene as a full party to the litigation, but may intervene for a limited purpose. *See, e.g., Beckman Industries, Inc. v. International Ins. Co.,* 966 F.2d 470, 472 (9th Cir.1992) (approving intervention of nonparty who sought only to modify a protective order).

■ The Ninth Circuit applies a four-part test to evaluate motions for intervention under Rule 24(a):

(1) the motion must be timely;

(2) the applicant must have a significantly protectable interest relating to the property or transaction which is the subject of the action;

(3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and

(4) the applicant's interest must be inadequately represented by the parties to the action.

*Smith v. Marsh,* 194 F.3d 1045 (citing *League of United Latin American Citizens v. Wilson,* 131 F.3d 1297, 1302 (9th Cir. 1997)). LGE argues that Apple actually knew that its products might be at issue as early as May 2002. LGE did not seek to amend its infringement contentions to include Apple products until October, however, mere weeks before Apple filed its motion to intervene. As Apple sought to intervene shortly after learning that LGE was seeking to add Apple products to its infringement contentions, Apple's motion to intervene is timely.

Whether an applicant for intervention demonstrates sufficient interest in an action "is a practical, threshold inquiry." *Southwest Center for Biological Diversity,* 268 F.3d at 818. "No specific legal or equitable interest need be established." *Id.* (quoting *Greene v. United States,* 996 F.2d 973, 976 (9th Cir.1993)). It is generally enough that the interest asserted "is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (quoting *Sierra Club v. United States EPA,* 995 F.2d 1478, 1484 (9th Cir.1993)). "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Forest Conservation Council,* 66 F.3d at 1496.

LGE argues that an "economic stake in the outcome of litigation, even if significant, is not enough," and cites *Greene v. United States,* 996 F.2d 973, 976 (9th Cir.1993). In *Greene,* however, the economic interest at issue was speculative. There, a federally recognized Indian tribe, the Tulalip, sought to intervene in an action by a non-recognized Indian tribe, the Samish, against the federal government to obtain federal recognition for

the Samish. The Tulalip were concerned that recognition of the Samish would dilute the Tulalip's fishing rights under a federal treaty. The court found that this interest was too speculative to provide a basis for intervention because "[f]ederal recognition does not self-execute treaty rights claims." *Id.* at 977.

Here, Apple has more than a speculative economic interest, as the products that it sells will be at the heart of the litigation if LGE's motion to amend is granted. As Apple sells the computers that LGE alleges infringe its patents, there can be no question that Apple has a legally protectable interest in the products that LGE seeks to place at issue in this patent infringement action. An applicant demonstrates a significantly protectable interest when the injunctive relief sought by the plaintiffs will have direct, immediate and harmful effects upon its legally protectable interests. *Southwest Center for Biological Diversity,* 268 F.3d at 818 (citing *Forest Conservation Council,* 66 F.3d at 1494).

Moreover, that interest will unquestionably be impaired if LGE prevails. In determining whether an interest would be impaired or impeded by disposition of the action, the Ninth Circuit has relied on the advisory committee notes to Rule 24, which state that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Southwest Center for Biological Diversity,* 268 F.3d at 822 (citing Fed.R.Civ.P. 24 advisory committee notes.) If LGE prevails in adding the Apple products to its infringement contentions, and the Court finds that those products infringe LGE's patents, Apple will no longer be able to sell them. Thus, the disposition of LGE's motion to amend may as a practical matter impair or impede Apple's ability to protect its interest.

■ In determining whether a would-be intervenor's interests will be adequately represented by an existing party, the Court considers:

(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.

*Southwest Center for Biological Diversity,* 268 F.3d at 822 (quoting *Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 838 (9th Cir.1996)). The burden of showing inadequacy is minimal, and the applicant need only show that representation of its interests by existing parties may be inadequate. *Id.* at 823 (citing *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972)). Where an application for intervention and an existing party "have the same *ultimate objective,* a presumption of adequacy of representation arises," however. *League of United Latin American Citizens v. Wilson,* 131 F.3d 1297, 1305 (9th Cir.1997) (citing *Northwest Forest Resource Council,* 82 F.3d at 838) (emphasis in original).

■ Although Quanta has a strong interest in defending against LGE's attempt to interject the Apple products that Quanta manufactures into this litigation, Apple also has a strong interest and may be able to provide information that Quanta lacks. For example,

Apple's products use technology not found in any IBM-compatible computers, including for example, a processor, a custom-designed motherboard, and a custom-designed and custom-built chipset. Quanta does not participate in the design or fabrication of any semiconductor components, but instead purchases the components from Apple's specified suppliers and assembles them into the PowerBook computers.

(Lutton Decl. in Support of Apple's Motion to Intervene.) Accordingly, Quanta may not have the same knowledge that Apple has about the design of the Apple products, and thus may not be able to adequately represent Apple's interests in this litigation. Apple also argues that because Quanta, to date, has fashioned its defense solely with respect to IBM-compatible computer products, it may not be in a position to develop all of the

defenses that may apply only to Apple's products. Apple has met its minimal burden of showing that representation of its interests by Quanta may be inadequate, and has rebutted the presumption that Quanta's representation of Apple's interest is adequate. Accordingly, the Court finds that Apple has demonstrated that it is entitled to intervene as a matter of right, pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.

■ Alternatively, even if Apple is not entitled to intervene as a matter of right, however, it is permitted to intervene under Rule 24(b)(2). Rule 24(b)(2) states:

> Upon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b)(2). Apple wishes to be heard on matters relating to the products it sells. Those products are already at issue in LGE's motion to amend its infringement allegations. Apple's desire to prevent LGE from amending its infringement allegations to include Apple products obviously has a question of law and fact in common with LGE's request to include those products in its infringement contentions. Apple's intervention would not delay or prejudice the adjudication of the rights of the original parties, because these issues have already been raised by the other parties. As Quanta has already objected to LGE's motion to amend its infringement contentions to add Apple products, the Court must consider these issues regardless of whether Apple intervenes. Accordingly, even if Apple is not entitled to intervene as a matter of right under Rule 24(a)(2), it is permitted to intervene under Rule 24(b)(2).

Thus, Apple's motion to intervene for the limited purpose of opposing LGE's motion to amend its Patent Local Rule 3–6(a) disclosures is granted. The Court will consider Apple's opposition to LGE's motion to amend Patent Local Rule 3–6(a) disclosures, which is attached as Exhibit A to Apple's motion to intervene.

## B. LGE's Motion to Amend Patent Local Rule 3–6(a) Disclosures

For the '645, '733, and '509 patents, LGE seeks leave to amend its infringement contentions to include additional products of defendants Asustek, FIC, and Compal (collectively, "the AFC defendants"). LGE also seeks to amend its infringement contentions with respect to these patents to include additional products of Quanta. For the '379 patent, LGE seeks to amend its infringement contentions to include additional products of the AFC defendants, and Quanta, and one additional product of Everex. For the '641 patent, LGE does not seek to amend its infringement contentions to include additional products of any of the defendants.

### 1. Patent Local Rules

Under this Court's Patent Local Rules, a party claiming patent infringement must serve on all parties a "Disclosure of Asserted Claims and Preliminary Infringement Contentions" not later than ten days after the Initial Case Management Conference. Patent L.R. 3–1. That disclosure must identify, among other things:

> [s]eparately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus must be identified by name or model number, if known. Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process[.]

Patent L.R. 3–1(b).

Patent Local Rule 3–6 provides that the plaintiff's Preliminary Infringement Contentions will be deemed to be that party's final contentions, except under limited circumstances set forth in that Rule:

If a party claiming patent infringement believes in good faith that (1) the Court's Claim Construction Ruling or (2) the documents produced pursuant to Patent L.R. 3–4 so requires, not later than 30 days after service by the Court of its Claim Construction Ruling, that party may serve "Final Infringement Contentions" without leave of court that amend its "Preliminary Infringement Contentions" with respect to the information required by Patent L.R. 3–1(c) and (d).

Patent L.R. 3–6. This Rule, by its terms, only permits amendment of the information required by Patent Local Rule 3–1(c) and (d). It does not apply here, as LGE seeks to amend the information required by Patent Local Rule 3–1(b).

Patent Local Rule 3–7 also authorizes the Court to permit amendment of the plaintiff's Preliminary Infringement Contentions, for good cause shown. "Amendment or modification of the Preliminary or Final Infringement Contentions ..., other than as expressly permitted in Patent L.R. 3–6, may be made only by order of the Court, which shall be entered only upon a showing of good cause." Accordingly, LGE may not amend its Preliminary Infringement Contentions unless it shows good cause.

### 2. Good cause

In discussing an earlier version of the Patent Local Rules, one case from this Court explained that:

> The patent local rules were adopted by this district in order to give claim charts more "bite." The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.... Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the "shifting sands" approach to claim construction.

*Atmel Corp. v. Information Storage Devices, Inc.*, 1998 WL 775115 at *2 (N.D.Cal.1998). Although the Patent Local Rules have since been amended to make it somewhat easier to amend claim charts, the general philosophy behind the Patent Local Rules remains as stated in *Atmel.* In *E–Pass Technologies, Inc. v. 3Com Corp.*, 222 F.Supp.2d 1157 (N.D.Cal.2002), the plaintiff sought to amend its infringement disclosures to add additional allegedly infringing products after the Court had issued its claim construction order and during briefing on cross-motions for summary judgment. *Id.* The Court, relying on Patent Local Rule 3–7 and *Atmel,* refused to "allow amendment of the claim chart at this late stage." *Id. See also JSR Corp. v. Tokyo Ohka Kogyo Co., Ltd.*, 2001 WL 1812378 at *5 (N.D.Cal.2001) (citing *Atmel* and refusing to allow a party to rescind, at the summary judgment stage, its prior stipulated claim construction because it "would encourage the 'vexatious shuffling of positions' that the patent local rules were designed to avoid.").

### 3. The AFC defendants' statement of non-opposition

The AFC defendants have filed a statement of non-opposition to LGE's motion. Everex has not opposed LGE's desire to amend its infringement contentions with respect to the '379 patent to include one additional product of Everex. As these defendants do not object to LGE's motion, the Court need not determine whether LGE has shown good cause for amending its infringement contentions with respect to these defendants. Accordingly, LGE's motion to amend its Patent Local Rule 3–6(a) disclosures with respect to the AFC defendants and Everex is granted.

### 4. Quanta's opposition

As Quanta has filed an opposition, however, the Court must review LGE's motion on the merits with respect to the Quanta defendants. LGE appears to contend that all of the Quanta products it seeks to add to its infringement contentions were covered by previous discovery responses. Thus, LGE argues that Quanta cannot be surprised or prejudiced by LGE's request to specifically identify those products in LGE's amended infringement contentions. Accordingly, LGE asserts that it has shown good cause to amend its infringement contentions to include additional Quanta products.

On February 8, 2002, LGE propounded a request for document production against Quanta that sought discovery about Quanta's computer system products that contained any one of six sets of certain specifically identified components. (Morris Decl. in Support of Motion to Amend ¶ 3.) On June 21, 2002, LGE served Rule 30(b)(6) deposition notices and Rule 30(b)(5) requests for production of documents that sought deposition and document discovery of Quanta's products that contained one of six combinations of particular products. (Id. ¶ 4.) On August 21, LGE served an amended notice of Rule 30(b)(6) deposition and request for production of documents on Quanta. (Id. ¶ 9 and Ex. 4.)[1] The amended notice identified by name, for the first time, some but not all of the products LGE seeks to include in its amended patent infringement contentions, and also continued to seek discovery on computer system products that contained any of the six sets of specifically identified components. (Id.) On September 6, 2002, LGE served supplemental answers to Quanta's interrogatories, in which it also identified certain of the Quanta products that it now seeks to add to its infringement contentions. (Id. ¶ 13, and Ex. 8.) The proposed amended infringement contentions were served on September 19. (Id. ¶ 15, and Ex. 10.)

LGE points out that Judge Zimmerman, at a hearing on January 30, 2002, declined to limit discovery to products that were specifically identified in LGE's initial patent infringement disclosures. At that hearing, Judge Zimmerman stated: "I don't think it necessarily follows that because a product hasn't been specifically accused that that forecloses all discovery." (Morris Decl. in Support of Motion to Amend, Ex. 13, at 10:9–11.) He also said:

> I am not saying that I'm restricting discovery to only the accused products or the products that have been identified. What I am saying is that the plaintiffs are entitled to require information about other products that may infringe. Where that will lead to, I don't know. It may lead to

certain case management problems that Judge Wilken will have to deal with. (Id. at 18:12–18.) "My ruling is not that the plaintiffs cannot seek discovery with respect to products other than the accused products." (Id. at 21:7–8.) Judge Zimmerman also stated, however, that:

> I suppose there may be a point in time at which I may conclude, again, that you're so far down the track of trying the case with respect to the accused products, that it just becomes a distraction and a diversion to be trying to bring in new products. I don't know that you're necessarily there yet. And as I say, it may well depend on how many new products are there.

(Id. 21:9–15.)

Finally, LGE argues that Quanta will not be prejudiced by the proposed amendments because the products LGE seeks to add to its infringement contentions have been identified from defendants' own document productions. LGE's motion also states that the infringement analysis for the recently identified products will be nearly identical to the products previously identified. According to LGE, any prejudice that might occur will have been caused by defendants' stonewalling on discovery, and not by the late addition of these products to LGE's infringement contentions. In addition, Judge Wilken has informed the parties that any trial in these actions will not begin until at least January 2004, more than a year from now.

### a. Quanta does not object to adding certain products to LGE's infringement contentions

Quanta does not object to LGE's proposed amendments to the extent they are based on Quanta's document production and would newly accuse Quanta's non-Apple, non-Intel-based products or its products with Microsoft NetMeeting software. Neither Quanta nor LGE indicates which products fall within these categories. As Quanta does not set forth any objections to LGE's request to add the following products to its infringement

1. Although the amended notice was served on August 21, the day after Judge Wilken's summary judgment and claim construction orders, LGE did not become aware of her orders until August 23. (Id. ¶ 5.)

contentions, however, the Court assumes that these products fall within these categories:

1. With respect to the '645 and '733 patents, Quanta's EA1, ET2, and CA2 computer products;

2. With respect to the '379 patent, Quanta's SU1, SU6, HL1 and HS1 computer products; and

3. With respect to the '509 patent, Quanta's HP Pavilion xf315, HP Pavilion xt345, HP Pavilion xt375, HP Pavilion ze1210, HP Pavilion ze1230, HP Pavilion ze1250, HP Pavilion ze 5170, HP Pavilion n6000 series, EA1, ET2, and ET2A computer products.

Accordingly, LGE's motion to amend its infringement contentions to add these products is granted.

### b. Judge Wilken's summary judgment order precludes LGE from amending its infringement contentions to include Quanta products that use Intel microprocessors and/or Intel chipsets

Quanta objects to LGE's motion to amend on a number of grounds. Quanta's first argument is that LGE should not be permitted to amend its infringement contentions to include any Intel-based products of infringing the '645, '379, or '733 patents because Judge Wilken already granted summary judgment that LGE could not recover damages for Quanta's sales of products with Intel microprocessors and chipsets under the '641, '645, '379, '419, and '733 patents. (This argument would also apply equally to the '641 and '419 patents, but LGE has not sought to amend its infringement contentions with respect to those patents to add additional Quanta products.) According to Quanta's opposition brief, the following Quanta products included in LGE's proposed amended infringement contentions contain both Intel microprocessors and Intel chipsets: Gateway Solo 1450 Series products, Gateway 450 Series Products, Gateway 600 Series Products, Gateway 400 Series Products, Dell Inspiron 4150, Dell Latitude C640, and Quanta's BS5, BS6, UA2, VK1, LT6, RT1, RT2, JT2, RT5, EA3, HM1, TM6, TM6B, and SS3 models.

Quanta has not submitted a declaration attesting to this alleged fact, but contends that LGE's proposed amended infringement contentions specifically list either the chipset or the microprocessor contained in each of the allegedly infringing products. In fact, LGE's proposed amended infringement contentions do not list the microprocessor for any of the newly identified products that are alleged to infringe the '645, '379, or '733 patents. LGE's proposed amended infringement contentions do identify all of the above-listed products as containing Intel chipsets, however.

As Judge Wilken granted Quanta's motion for summary judgment with respect to products containing Intel chipsets and/or Intel microprocessors, LGE's motion to amend its infringement contentions to add Quanta products containing Intel chipsets is denied. The motion is denied without prejudice to filing a motion for reconsideration, however, if Judge Wilken amends her August 20 summary judgment ruling.

### c. LGE cannot amend its infringement contentions with respect to the '509 patent to include Quanta products that do not include Microsoft NetMeeting

Quanta objects that LGE has no basis for amending its infringement contentions to allege that the Quanta computers that Dell sells as its Inspiron 4150 and Latitude C640 models infringe the '509 patent. LGE's claim chart for the '509 patent alleges that the accused products infringe independent claim 35 of that patent, which is the only independent claim of that patent at issue, in part by using group collaboration software such as Microsoft NetMeeting. (Morris Decl. in Support of Motion to Amend, Ex. 10, Tab 5 at 4–5.) Quanta attests that these computers do not include Microsoft NetMeeting software, or other group collaboration software. (Chu Decl. ¶ 8.) LGE does not dispute Quanta's assertions. Accordingly, LGE's motion to amend its infringement disclosures to accuse these products of infringing the '509 patent is denied.

#### d. Quanta does not make certain products that LGE claims are infringing products

LGE seeks leave to amend its infringement disclosures to allege that Quanta is infringing the '645, '733, and '509 patents by making and selling the Gateway 200 series product line. LGE also seeks leave to amend its infringement disclosures to allege that Quanta is infringing the '509 patent by making and selling the HP Pavilion xz275, HP Pavilion xz295, HP Pavilion xz355, HP Pavilion zt1260, HP Pavilion zt1270, HP Pavilion zt1290 and HP Pavilion n5000 series products. Quanta attests that it does not make or sell these products. (Chu Decl. ¶ 6.) LGE does not dispute Quanta's assertions. Accordingly, LGE's motion to amend its infringement contentions to accuse Quanta of infringing its patents by making and selling these products is denied.

#### e. Quanta's BS1 and BS3 Models Fall Outside the Relevant Time Period

LGE seeks permission to accuse Quanta's BS1 and BS3 models of infringing the '645,- '733, and '509 patents. Quanta attests that it has not made, used, sold, or offered for sale in the United States, nor caused to be sold in the United States, any BS1 or BS3 models in the period from September 9, 1999 to the present. (Chu Decl. ¶¶ 4–5.) According to Quanta, LGE's discovery requests have only sought information about products sold in the United States from September 9, 1999 to the present. (See, e.g., Morris Decl. in Support of Motion to Amend, Ex. 4 at 8– 9.) LGE does not dispute Quanta's assertions. Accordingly, LGE's motion to amend its infringement contentions to accuse Quanta of infringing its patents by making and selling these products is denied.

#### f. Apple products

■ One hotly disputed category of products that LGE seeks to include in its amended infringement contentions is a number of products manufactured by Quanta for Apple. LGE seeks to amend its infringement contentions to allege that the following Apple products infringe the '645 and '733 patents:

Apple PowerBook G3 Series, PowerBook FireWire, and PowerBook G4 Series. According to LGE, the Apple products contain the same essential components as other Quanta computer systems that LGE previously identified as infringing, and have been sought by LGE's discovery requests since at least February 2002. Quanta opposes the motion, and Apple has also filed a brief opposing this portion of LGE's motion to amend. As the parties' arguments on this point appear in both their briefing on LGE's motion to amend, and their briefing on LGE's motion to compel, the Court will consider all of those arguments together.

In its February 2002 requests for document production, and in subsequent discovery requests, LGE sought discovery about specific computer products, as well as any computer system products including any of several sets of components. (Morris Decl. in Support of Motion to Amend ¶ 3.) These component lists were based on LGE's infringement contentions for each of the patents-in-suit. (Morris Decl. in Support of Motion to Compel ¶ 5.) For the '645 patent, the list of components was "a DRAM, a PCI Bus, a PCI Bus Master, and a Chipset having either a North Bridge or a combination of MCH and IOCH." (Id.) For the '733 patent, the list of components was "a Chipset, a PCI Bus, and multiple PCI Bus Masters supporting Burst Transfers, at least one of which PCI Bus Masters includes a Latency Timer." (Id.)

LGE's expert, Alan Smith, attests that the Apple PowerBook Computer, the Apple PowerBook G3 Series Computer, and the Apple PowerBook G4 Computer each have DRAM, a PCI bus, a PCI bus master, and a North Bridge. (Smith Decl. in Support of LGE's Motion to Compel, ¶ 5–11.) Thus, Smith's declaration supports LGE's contention that these products infringe the '645 patent. Smith does not, however, attest that these products also contain the list of components LGE believes are necessary to infringe the '733 patent; he offers no opinion as to whether these Apple products contain a Chipset, a PCI Bus, and multiple PCI Bus Masters supporting Burst Transfers, at least

one of which PCI Bus Masters includes a Latency Timer.

Quanta argues that LGE did not seek discovery of Apple products when it sought discovery of computer products containing these sets of components because when LGE defined "Chipset" in its discovery requests, it did not include Apple Chipsets in that definition. LGE's document requests define "Chipset" to "refer to a computer chip or a set of computer chips that interfaces with a Processor, DRAM, and peripherals in a computer ... [and] is also referred to as a 'core logic.'" (Fox Decl. in Opposition to Motion to Compel, Ex. E at 5–6.) LGE then included in the definition a lengthy list of dozens of examples of Chipsets, which do not include any Apple products. (*Id.*) The Apple products "use technology not found in any IBM-compatible computers, including for example, a ... custom-designed and custom-built chipset." (Lutton Decl. in Support of Motion to Intervene ¶ 5.) The fact that the lengthy list of examples of specific Chipsets included in the definition of "Chipset" in LGE's discovery requests does not include any Apple chipsets supports Quanta's and Apple's contention that LGE did not intend to seek information about Apple products.

Quanta also has submitted the declaration of Hsiao–Ti Lee, who is a hardware engineer for Quanta's Apple team. (Lee Decl. in Opposition to Motion to Compel ¶ 2.) Although LGE's discovery requests addressed Chipsets with a "North Bridge," Lee attests that:

Quanta's Apple team does not use the term "North Bridge." Instead, the term "North Bridge" is commonly associated with products based on Intel architecture.

(*Id.* ¶ 5.) The Lee declaration also supports Quanta's argument that one would not normally read LGE's discovery requests to encompass Apple products. If the term "North Bridge" is commonly associated with Intel products and not with Apple, it is reasonable to assume that discovery requests seeking information about computer equipment containing a "North Bridge" were not seeking information about Apple products.

Both Quanta and Apple argue that there is no reason that LGE could not have asserted its claims early in this litigation. LGE states, albeit without citation to a declaration, that it did not know that the Apple products are actually manufactured by Quanta until July 2002. Quanta and Apple point to numerous news articles from 2001 which discuss the fact that Quanta is manufacturing laptop computers for Apple. Even more importantly, Apple points out that:

[F]or several years, LGE affiliates have supplied components to Quanta for use in Apple's PowerBook computers. Specifically, LG–Phillips LCD supplies Quanta with the flat panel display components that are used in the PowerBooks, and LG Chem Ltd. supplies Quanta with batteries that are used in the PowerBooks. These components are supplied pursuant to a special arrangement between Apple, Quanta and the respective LGE affiliate, specifically for use in Apple computers.

(Lutton Decl. in Support of Motion to Intervene ¶ 8.) The Court agrees with Quanta and Apple that LGE could have alleged infringement against the Apple products early in this litigation, and that it has not shown good cause for waiting until now to attempt to add those products to this litigation.

In addition, this case has been proceeding for a year and half without the Apple products. Judge Wilken has already issued her claim construction order. None of the parties had an opportunity to frame their claim construction arguments with the Apple products in mind, because no one knew they were at issue. The Apple products "use technology not found in any IBM-compatible computers, including for example, a processor, a custom-designed motherboard, and a custom-designed and custom-built chipset." (Lutton Decl. in Support of Motion to Intervene ¶ 5.) To allow LGE to amend its infringement contentions now would require reopening claim construction to cure the prejudice to the defendants. In addition, discovery is about to close. Although no trial date has yet been set, adding the Apple products to this litigation at this late date would cause very significant delays in the resolution of these cases.

Quanta contends that LGE's desire to accuse Apple products was motivated not by its

investigation, but by Judge Wilken's indication in June 2002 that she would likely grant Quanta's motion for summary judgment that LGE cannot assert infringement against Quanta's Intel-based products. While Quanta may be correct, the Court will not indulge in mere conjecture.

In support of its motion, LGE also points to an opinion of counsel that Quanta produced to LGE. (Morris Decl. in Support of Motion to Amend ¶ 17, and Ex. 12.) That opinion specifically analyzed some of Quanta's Apple products in light of the patents-in-suit in June, 2002, several months before LGE specifically identified those products to Quanta in discovery requests. (*Id.* at Ex. 12.) This is of little weight, however, as the mere fact that Quanta analyzed its products in light of LGE's products does not demonstrate that it was reasonable for them to expect that all of their products would be accused of infringement, particularly since the opinion they obtained concluded that there was no infringement.

To summarize, LGE's discovery requests did not give any notice to Quanta that LGE sought information about Apple products. LGE should have known that Quanta produced the Apple products because it was widely reported in the press, and because LGE's own affiliates supplied parts for those specific products. Because LGE did not give notice to Quanta or Apple that the Apple products were at issue, Quanta and Apple did not have the opportunity to consider those products in drafting their claim construction arguments. The claim construction order has already issued. In addition, discovery is nearly completed. To allow LGE to add these new products to the case at this late date would cause significant delay that easily could have been avoided. For all of these reasons, the Court finds that LGE has not set forth good cause for its lengthy delay in seeking to amend its infringement contentions to include the Apple products. Accordingly, LGE's motion to amend is denied with respect to those products.

### C. LGE's Motion to Compel (Apple issues)

LGE has filed a motion to compel discovery on an assortment of related subjects.

One issue raised is whether the Court should compel Quanta to provide discovery on its Apple products. As the Court has denied LGE's motion to amend its infringement contentions to add allegations against the Apple products, and as it is undisputed that the Apple products use technology not found in any IBM-compatible computers, LGE's discovery requests with respect to the Apple products are not relevant to any issue in this litigation. LGE does not argue that it needs discovery with respect to the Apple products in order to litigate its claims against the non-Apple products that are at issue in this litigation. Accordingly, LGE's motion to compel discovery with respect to the Apple products is denied.

### D. Apple's Motion for Protective Order Against the Disclosure of Confidential Apple Information by Quanta and Motion to Quash LGE's Subpoena Duces Tecum Against Apple

Apple has filed a motion for a protective order precluding LGE from taking discovery from Quanta or any other defendant regarding confidential information about the design and function of Apple's PowerBook line of computers, including the Apple products. Apple also seeks a protective order precluding LGE from taking discovery from Quanta or any other defendant regarding Quanta's manufacture and sales of Apple PowerBook products. Apple also seeks an order quashing LGE's October 22, 2002 subpoena duces tecum to Apple in its entirety, and precluding LGE from taking discovery of the design and operation of Apple's computer products.

For the reason already stated, the Apple products have never been part of this litigation and have no relevance to the products that are part of this litigation. Accordingly, Apple's motion for a protective order and motion to quash is granted in its entirety.

### E. Apple's Motion for Protective Order and to Quash Deposition Subpoena

Apple has also filed a motion for a protective order seeking to preclude LGE from taking discovery of the design and operation of Apple's computer products and of Apple's

purchases of such products from Quanta, and an order quashing LGE's November 6, 2002 deposition subpoena to Apple in its entirety. For the same reasons already stated above, this motion is also granted in its entirety.

### F. LGE's motion to compel (non-Apple issues)

LGE's motion to compel also raises issues that do not involve Quanta's Apple products. First, LGE moves to compel FIC and Compal to provide discovery concerning the facts and circumstances that they contend give rise to an implied license to practice any claim of the patents-in-suit, and also to provide discovery as to all Intel-based products where FIC and Compal contend that the Intel components have no reasonable non-infringing uses. Second, LGE moves to compel Quanta, Asustek, Compal, and FIC to provide discovery for all Intel-based products falling within LGE's discovery requests that include Intel components that were purchased before the effective date of the license between Intel and LGE. Third, LGE moves to compel Quanta, Asustek, Compal, and FIC to provide discovery on all Intel-based products that LGE contends infringe method claims of any of the patents-in-suit.

All of these issues require interpretation of Judge Wilken's August 20 summary judgment opinion. FIC and Compal have filed motions for partial summary judgment before Judge Wilken, and the parties have submitted briefs in conjunction with those motions that contain all of the legal arguments restated in the briefing on this motion to compel. On November 20, Judge Wilken issued an order requesting further briefing, and indicated that she is treating LGE's cross-motion for summary judgment as a motion for reconsideration of her August 20 summary judgment opinion. The Court agrees with defendants that it makes little sense for this Court to separately interpret Judge Wilken's prior order when all of these issues are already being considered by Judge Wilken. Accordingly, the Court will defer ruling on this portion of LGE's motion to compel until after Judge Wilken rules on the pending motions for summary judgment.

### III. CONCLUSION

For the reasons set forth above, and for good cause shown:

1. Apple's motion to intervene for the limited purpose of opposing LGE's motion to amend its infringement contentions to include Apple products (docket # 299) is granted.

2. LGE's motion to amend its Patent Local Rule 3–6(a) disclosures (docket # 289) is granted in part and denied in part, as follows:

   a. LGE's motion to amend its Patent Local Rule 3–6(a) disclosures to accuse additional products of the AFC defendants of infringing its patents is granted.

   b. LGE's motion to amend its Patent Local Rule 3–6(a) disclosures to accuse Quanta's EA1, ET2, and CA2 computer products of infringing the '645 and '733 patents, to accuse Quanta's SU1, SU6, HL1 and HS1 computer products of infringing the '379 patent, and to accuse Quanta's HP Pavilion xf315, HP Pavilion xt345, HP Pavilion xt375, HP Pavilion ze1210, HP Pavilion ze1230, HP Pavilion ze1250, HP Pavilion ze 5170, HP Pavilion n6000 series, EA1, ET2, and ET2A computer products of infringing the '509 patent is granted, as Quanta has stated no objection.

   c. LGE's motion to amend its Patent Local Rule 3–6(a) disclosures to accuse Quanta products containing Intel chipsets (i.e., Gateway Solo 1450 Series products, Gateway 450 Series Products, Gateway 600 Series Products, Gateway 400 Series Products, Dell Inspiron 4150, Dell Latitude C640, and Quanta's BS5, BS6, UA2, VK1, LT6, RT1, RT2, JT2, RT5, EA3, HM1, TM6, TM6B, and SS3 models) of infringing the '645, '379, or '733 patents is denied without prejudice to filing a motion for reconsideration if Judge Wilken amends her August 20 summary judgment ruling.

   d. LGE's motion to amend its Patent Local Rule 3–6(a) disclosures to accuse

the Quanta computers that Dell sells as its Inspiron 4150 and Latitude C640 models of infringing the '509 patent is denied.

    e. LGE's motion to amend its Patent Local Rule 3–6(a) disclosures to accuse Quanta of infringing the '645, '733, and '509 patents by making and selling the Gateway 200 series product line, and of infringing the '509 patent by making and selling the HP Pavilion xz275, HP Pavilion xz295, HP Pavilion xz355, HP Pavilion zt1260, HP Pavilion zt1270, HP Pavilion zt1290 and HP Pavilion n5000 series products, is denied.

    f. LGE's motion to amend its Patent Local Rule 3–6(a) disclosures to accuse Quanta's BS1 and BS3 models of infringing the '645, '733, and '509 patents is denied.

    g. LGE's motion to amend its Patent Local Rule 3–6(a) disclosures to accuse Quanta's Apple PowerBook G3 Series, PowerBook FireWire, and PowerBook G4 Series of infringing the '645 and '733 patents is denied.

    3. LGE's motion to compel (docket # 262) is decided as follows:

    a. LGE's motion to compel Quanta to provide discovery about the Apple products is denied.

    b. The Court will defer ruling on the remainder of LGE's motion to compel until Judge Wilken rules on the pending motions for summary judgment filed by FIC and Compal. The parties will notify the Court immediately when Judge Wilken issues her ruling, and will inform the Court whether they wish to rely on the briefing already submitted, or whether they wish to file additional briefing in light of Judge Wilken's ruling.

    4. Apple's motion for protective order against the disclosure of confidential Apple information by Quanta and motion to quash LGE's subpoena duces tecum against Apple (docket # 303) is granted in its entirety.

    5. Apple's motion for protective order and to quash deposition subpoena (docket # 344) is granted in its entirety.

    IT IS SO ORDERED.