CONVOLVE, INC. and Massachusetts Institute of Technology, Plaintiffs,

v.

COMPAQ COMPUTER CORP. and Seagate Technology LLC, Defendants.

No. 00 Civ. 5141(GBD)(JCF).

United States District Court, S.D. New York.

Dec. 10, 2008.

Jablonski, Christopher D. Landgraff, Mark E. Ferguson, Bartlit Beck Herman Palenchar & Scott LLP, Chicago, IL, Mary B. Boyle, McDermott, Will & Emery, LLP, Palo Alto, CA, for Compaq Computer Corp.

Andrew Bennett Kratenstein, Michael S. Sommer, Obiamaka P. Madubuko, Lisa Marie Ferri, Philip Charles Canelli, McDermott, Will & Emery, LLP, Debra Brown Steinberg, Cadwalader, Wickersham & Taft LLP, New York, NY, Brian L. Baker, Will & Emery LLP, Daniel E. Alberti, Michele Eileen Moreland, Sabrina A. Chang, John Owen Gilmore, Vera M. Elson, McDermott, Will & Emery, LLP, Terrence P. McMahon, McKermott, Will & Emery LLC, Palo Alto, CA, Eric W. Hagen, McDermott, Will & Emery L.L.P., Los Angeles, CA, G. Hopkins Guy, Orrick, Herrington & Sutcliffe LLP, David Henry Dolkas, William G. Gaede, III, McDermott Will and Emery LLP, Menlo Park, CA, Wei–Chen Chen, Blair Martin Jacobs, McDermott, Will & Emery, Washington, DC, for Seagate Technology LLC.

*MEMORANDUM AND ORDER*

JAMES C. FRANCIS IV, United States Magistrate Judge.

There are several matters currently pending before the Court in this patent infringement case, all concerning a 1994 masters thesis written by William H. Ray titled "The Reduction of Acoustic Noise Emissions from a Hard Disk Drive" (the "Ray Thesis"). The defendants move for permission to amend their invalidity contentions to incorporate the Ray Thesis and they seek additional discovery related to it. Since filing this motion, both defendants have supplemented their expert reports to include opinions based upon the Ray Thesis. The plaintiffs have filed cross-motions to strike these additions to the defendants' expert reports.

Tom M. Fini, Debra Brown Steinberg, Cadwalader, Wickersham & Taft LLP, New York, NY, James H. Bowhay, James R. Figliulo, Figliulo & Silverman, P.C., Chicago, IL, for Convolve, Inc., Massachusetts Institute of Technology.

James T. Bailey, Kevin James McNamee, Tod Mathew Melgar, Cadwalader, Wickersham & Taft LLP, New York, NY, for Convolve, Inc.

Herbert F. Schwartz, Robert F. Bahrampour, Ropes & Gray, LLP, Diane C. Hertz, Richard S. Taffet, Bingham McCutchen LLP, New York, NY, Robert J. Goldman, Ropes & Gray, LLP, East Palo Alto, CA, Carolyn Frantz, Carrie A.

*Background*

The plaintiffs, Convolve, Inc. ("Convolve") and the Massachusetts Institute of Technology ("MIT"), developed technology to improve the performance of computer disk drives by permitting a computer user to "control the trade-off between speed and acoustics." (Amended Complaint ("Am. Compl."), ¶ 1). In 1998, under a confidentiality agreement, Convolve shared proprietary information about this technology with defendant Seagate Technology LLC ("Seagate"), which manufactures computer disk drives, and with defendant Compaq Computer Corporation ("Compaq"), which manufactures computers.[1] (Am. Compl., ¶¶ 8, 16, 17). The plaintiffs allege that the defendants breached this confidentiality agreement, misappropriated trade secrets, and infringed the plaintiffs' patents in connection with the plaintiffs' "Input Shaping"[2] and "Quick and Quiet"[3] technologies. (Am. Compl., ¶¶ 1–13).

Seagate served its first document requests in August 2000. Among the documents requested from MIT were all documents referring to Neil C. Singer, a former MIT researcher and Convolve's founder. (Am. Compl. ¶ 20; Seagate Technology LLC's First Request for Production of Documents to Plaintiff Massachusetts Institute of Technology ("Def.

First MIT Doc. Req."), attached as Exh. 15 to Declaration of Lisa M. Ferri dated Oct. 1, 2008 ("Ferri Decl."), Doc. Req. No. 14). Seagate requested from both plaintiffs "[a]ll publicly available documents which disclose, discuss or otherwise describe any feature of Input Shaping or Quick and Quiet technology ...." (Def. First MIT Doc. Req., Doc. Req. No. 11; Seagate Techonology LLC's First Request for Production of Documents to Plaintiff Convolve, Inc. ("Def. First Convolve Doc. Req."), attached as Exh. 17 to Ferri Decl., Doc. Req. No. 12).[4]

Initially, the plaintiffs refused to produce any responsive documents to the defendants and a discovery dispute ensued. *See Convolve, Inc. v. Compaq Computer Corp.*, No. 00 Civ. 5141, 2000 WL 1480363, at *1 (S.D.N.Y. Oct. 6, 2000). Ultimately, the Court compelled production, finding that "Plaintiffs waived their right to object to Defendant Seagate's document requests by not replying in a timely manner." *Id.* at *2. Although the plaintiffs produced responsive documents pursuant to this order, neither plaintiff produced the Ray Thesis then or at any subsequent time.

The defendants served their Preliminary Invalidity Contentions on October 14, 2002. The parties then proceeded to the claim construction phase, submitting a Joint

---

**1.** For a detailed description of the events giving rise to this lawsuit, see *Convolve, Inc. v. Compaq Computer Corp.*, No. 00 Civ. 5141, 2006 WL 839022, at *1–4 (S.D.N.Y. March 31, 2006).

**2.** The "Input Shaping" technology facilitates quicker and quieter computer operation by reducing vibrations associated with movements of a computer's hard drive. (Am. Compl., ¶ 3). MIT owns the "Input Shaping" technology; Convolve is its exclusive licensee. (Am. Compl., ¶¶ 3, 20).

**3.** The "Quick and Quiet" application is an computer control panel feature that allows

the computer user to select either the fastest or quietest search mode. (Am. Compl., ¶ 6). Convolve owns the "Quick and Quiet" technology. (Am. Compl., ¶ 6).

**4.** Similarly, Compaq's first document request to MIT, served in 2002, requested all documents concerning "Input Shaping" and the "Quick and Quiet" feature. (Compaq Computer Corp.'s First Request for the Production of Documents and Things to Plaintiff Massachusetts Institute of Technology, attached as Exh. A to Declaration of Brian P. O'Donoghue dated Oct. 21, 2008, Doc. Req. Nos. 14, 18, 19).

Claim Construction and Prehearing Statement on November 12, 2002. They briefed claim construction in December 2002 and January 2003, and a *Markman* hearing[5] was held on March 30 and 31, 2004. The Court issued a claim construction ruling on August 9, 2005, and on December 7, 2005, denied the defendants' motion to reconsider that decision.

Since then, the parties have been embroiled in discovery disputes, including several prior requests by the defendants to serve amended invalidity contentions. Expert discovery concluded on August 26, 2008. (Order dated Nov. 5, 2007). Although there is currently no date set for trial, dispositive motions are due December 12, 2008.

The defendants brought the instant motion to amend on October 1, 2008.[6] As stated above, the defendants seek new discovery related to the Ray Thesis in addition to permission to amend. The amount of new discovery requested is considerable. In addition to an un-redacted copy of the Ray Thesis, the defendants seek the identity of any Convolve employee who knew of the Ray Thesis prior to August 2000, any documents created by the plaintiffs that concern the Ray Thesis, and several additional depositions of fact and expert witnesses. (Seagate Memo at 2–3).

The plaintiffs object to the defendants' request to amend and to any further discovery. They have also moved to strike additions to the defendants' expert reports concerning the Ray Thesis.

*Discussion*

### A. Standard for Amendment

 Invalidity defenses based on prior art must be asserted in detail at least thirty days before trial. 35 U.S.C. § 282. However, recognizing that thirty days provides little time for a patent holder to properly evaluate assertions of prior art and prepare for trial, some courts order that invalidity contentions be filed by an earlier date. *See Finisar Corp. v. DirecTV Group, Inc.*, 424 F.Supp.2d 896, 898–99 (E.D.Tex.2006). Courts possess extensive power to regulate discovery and enforce their scheduling orders, with sanctions if necessary; likewise, courts have broad discretion to allow amendments for good cause. *See* Fed. R. Civ. Proc. 37(c) (granting discretion to impose sanctions for discovery violations); Fed. R. Civ. Proc. 15(a) (allowing courts to permit amendments to pleadings when "justice so requires"). Although leave to amend is

---

5. In *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), the Supreme Court held that construction of patents is a matter exclusively within the province of the court.

6. Seagate's initial motion was purportedly on behalf of itself and Compaq. (Seagate Technology LLC's Memorandum of Law in Support of its Motion for Leave to Amend Its Invalidity Contentions for Good Cause and Leave to Serve Limited Discovery ("Seagate Memo.") at 1). However, Compaq's counsel failed to sign Seagate's motion or its accompanying memorandum and the plaintiffs initially objected to Compaq joining Seagate's motion. (Plaintiffs' Memorandum of Law (1) in Opposition to Defendants' Motion for Leave to Amend Invalidity Contentions Without Good Cause, to Reopen Discovery, and to Avoid Trial; and (2) in Support of Convolve Inc.'s Cross–Motion to Strike New Expert Opinions Served in Violation of Court Orders ("Pl. Memo.") at 5). Compaq promptly addressed the plaintiffs' concerns by adding the signature of its counsel where required and by filing a formal motion to join Seagate. (Memorandum of Law in Support of Compaq Computer Corp.'s Motion to Join Seagate Technology LLC's Motion for Leave to Amend its Invalidity Contentions for Good Cause and Leave to Serve Limited Discovery at 2). The plaintiffs' initial objections are now moot. Accordingly, I treat Seagate's original motion to amend and for additional discovery as brought on behalf of both defendants.

granted freely in most cases, a more conservative approach must be applied in patent cases to "prevent the 'shifting sands' approach to claim construction." *LG Electronics, Inc. v. Q–Lity Computer Inc.*, 211 F.R.D. 360, 367 (N.D.Cal.2002) (quoting *Atmel Corp. v. Information Storage Devices, Inc.*, No. C 95–1987, 1998 WL 775115, at *2 (N.D.Cal. Nov. 5, 1998)). Indeed, pursuant to a stipulation and order entered in this case in 2005, the Court shall only grant leave to amend the parties' final infringement or invalidity contentions upon a showing of good cause. (Stipulation and Order Regarding Amended Contentions dated Nov. 28, 2005, attached as Exh. 24 to Ferri Decl., ¶ 1(d)).

> In evaluating a motion to amend invalidity contentions for good cause, courts consider such factors as (1) the reasons proffered for the need to amend after the deadline for submitting contentions had passed, (2) the diligence of the moving party, (3) the importance of the proposed amendments, together with any prejudice to the moving party if amendment is denied, (4) potential prejudice to the non-moving party, and (5) the availability of a continuance to cure any prejudice.

*Convolve, Inc. v. Compaq Computer Corp.*, No. 00 Civ. 5141, 2007 WL 700904, at *2 (S.D.N.Y. March 7, 2007); *see also Berger v. Rossignol Ski Co.*, No. C 05–02523, 2006 WL 1095914, at *4–5 (N.D.Cal. April 25, 2006) (discussing diligence and prejudice); *Finisar Corp.*, 424 F.Supp.2d at 899–900

(outlining non-exclusive five factor test); *Alt v. Medtronic, Inc.*, No. 2:04–CV–370, 2006 WL 278868, at *2 (E.D.Tex. Feb. 1, 2006) (outlining four factor test for allowing modification of scheduling order).

**B.** *Good Cause to Add Ray Thesis*

**1.** *Explanation for Need to Amend*

■ The plaintiffs' failure to identify the Ray Thesis at an earlier date is the defendants' sole excuse for their own tardiness. The defendants contend that the Ray Thesis is responsive to several of their initial document requests.[7] Therefore, the defendants argue, the thesis should have been identified by one or both of the plaintiffs either initially or subsequently pursuant to their continuing obligation to supplement discovery responses.

The Ray Thesis has been part of MIT's library collection since April 6, 1994.[8] (Ray Thesis, attached as Exh. 11 to Ferri Decl., at 1). Its central focus is computer acoustic reduction through shaping commands, a subject matter directly related to the "Input Shaping" technology. (Ray Thesis at 3; U.S. Patent and Trademark Office Order Granting Request for Ex Parte Reexamination dated Nov. 20, 2008 ("PTO Reexamination Order"), attached as Exh. A to Letter of Terrence P. McMahon dated Nov. 25, 2008, at fax page 14). The thesis is thus responsive to Seagate's request for "all publicly available documents which disclose, discuss or otherwise describe any feature of Input Shaping or

---

**7.** Seagate also claims that the Ray Thesis is responsive to requests for documents (1) "claimed by anyone to be prior art" and (2) concerning "the level of knowledge, schooling, experience, expertise, or relevant technical information of a person having ordinary skill in the art to which any Invention disclosed in each of the Patents-in-suit pertains." (Seagate Memo. at 8). At best, these requests are superfluous and unnecessary to the defendants' motion; accordingly, I have not factored them into my discussion.

**8.** Although the Ray Thesis has been part of MIT's library collection since 1994, it has apparently only been available on Dspace, MIT's on-line research material depository, since November 2006. *See* Dspace, Full Item Record for The Reduction of Acoustic Noise Emissions from a Hard Disk Drive by William H. Ray, http://dspace.mit.edu/handle/1721.1/34324?show=full (last visited Dec. 8, 2008).

Quick and Quiet technology." (Def. First MIT Doc. Req., Doc. Req. No. 11; Def. First Convolve Doc. Req., Doc. Req. No. 12). In addition, the Ray Thesis includes a section discussing Mr. Singer's past work in reducing computer vibrations. (Ray Thesis at 36–37). Therefore, the Ray Thesis is also responsive to Seagate's request that MIT produce documents referencing Mr. Singer. (Def. First MIT Doc. Req., Doc. Req. No. 14).

Discovery may be had of relevant documents that are in the "possession, custody or control" of a party. Fed.R.Civ.P. 26(b)(1) & 34(a)(1). The plaintiffs admit that the Ray Thesis has been in MIT's possession and do not deny its relevance. Rather, the plaintiffs argue that MIT had no legal obligation to search its "voluminous, publicly accessible" libraries for documents like the Ray Thesis. (Pl. Memo. at 19). To support their position, the plaintiffs cite several cases for the proposition that discovery is not required of public documents that are equally accessible to all parties.[9] *See, e.g., Valenzuela v. Smith,* No. S 04–0900, 2006 WL 403842, at *2 (E.D.Cal.2006) (declining to compel defendant prison medical doctors to produce documents equally available to plaintiff in prison law library); *Securities and Exchange Commission v. Samuel H. Sloan & Co.,* 369 F.Supp. 994, 995 (S.D.N.Y.1973) (declining to compel production of administrative hearing transcript which was publicly available through court reporting service). These cases, however, are inapposite.

In 1994, Mr. Ray submitted the Ray Thesis to MIT in partial fulfillment of his MIT masters degree in electrical engineering. (Ray Thesis at 1). MIT has had complete control over the thesis ever since. Indeed, MIT is directly responsible for the Ray Thesis' public availability: MIT added the thesis to its library collection in 1994 and made it available on-line in 2006. Although the Ray Thesis may have been accessible to the defendants, at least in theory, the plaintiffs were undeniably in the best position to identify and produce it. Furthermore, although an objection on burden grounds may have been viable as an original matter, it is no longer tenable after the Court's October 2000 ruling. *See Convolve, Inc.,* 2000 WL 1480363, at *1 (ordering production of all documents responsive to Seagate's initial document requests without exception).

In sum, the plaintiffs have failed to justify MIT's failure to produce the thesis in 2000 or subsequently as MIT gained the capacity to search its collections on-line. The defendants have thus offered a persuasive justification for their need to amend their invalidity contentions after the deadline.

### 2. *Defendants' Diligence*

■ According to the plaintiffs, "the central issue now before the Court" is whether the defendants acted diligently in moving to amend. (Letter of Debra Brown Steinberg dated Dec. 1, 2008 at 1). The plaintiffs insist that Seagate has known or should have known of the Ray Thesis since 2006. (Pl. Memo. at 9–15). Therefore, according to the plaintiffs, Seagate's failure to move for amendment at an earlier date demonstrates a damning lack of diligence.

---

**9.** The plaintiffs also cite a paragraph taken from a past ruling by the special master who previously oversaw discovery. (Pl. Memo. at 19). Although they claim that this paragraph "defined the contours of a reasonable document search," in actuality the special master was opining on an unrelated matter that has no relevance to the instant dispute. (Pl. Memo at 19; Oct. 9, 2003 Order of Special Master Pasquale A. Razzano, attached as Exh. S to Affidavit of Kevin J. McNamee dated Oct. 17, 2008).

In 2006, Convolve initiated a so-called interference proceeding, a special administrative proceeding conducted by the U.S. Patent and Trademark Office (the "PTO"), against Seagate. (Pl. Memo. at 10; Seagate Memo. at 16). Although this proceeding shared similar issues with the instant litigation, it was its own distinct action. Mr. Ray served as an expert engineer for Seagate during the interference proceeding. (Pl. Memo. at 11–12; Seagate Memo. at 16). Although the Ray Thesis was mentioned in passing during the course of Mr. Ray's deposition, Mr. Ray never asserted that his thesis might be prior art or referenced it in any other way. (Pl. Memo. at 11–12; Seagate Memo. at 16). Convolve contends that Seagate knew or should have known of the Ray Thesis in 2006 by virtue of Mr. Ray's involvement as an expert witness. (Pl. Memo. at 9–15).

However, in this case the Court ordered all parties to erect a wall between their litigation counsel and counsel representing them in any PTO proceeding, including the interference proceeding. (Transcript of Hearing before the Honorable George B. Daniels dated July 20, 2006 ("7/20/06 Hearing Transcript"), attached as Exh. 32 to Ferri Decl., at 25–26). In accordance with this directive, Seagate had legal teams of both in-house and outside counsel for the interference proceedings separate from counsel in this case. (Seagate Memo. at 18). These attorneys were prohibiting from sharing information with Seagate's litigation counsel. (7/20/06 Hearing Transcript at 26). Indeed, Seagate's outside litigation counsel, McDermott Will & Emery LLP, has declared under penalty of perjury that it first learned of the Ray Thesis in August 2008. (Declaration of Vera M. Elson dated Oct. 22, 2008, ¶ 2).

This affirmation is uncontested. There is thus no showing that the defendants have been anything but diligent.

### 3. *Importance of the Ray Thesis*

■ As expected, the parties dispute the importance of the Ray Thesis. Seagate insists that it is "highly relevant" prior art that could potentially invalidate one of the plaintiffs' patents (Seagate Memo. at 1, 12), while the plaintiffs point to "material differences" between the Ray Thesis and their patented technology, (Pl. Memo. at 21–23). For purposes of resolving the instant dispute, I am persuaded by the PTO's recent determination that the Ray Thesis, either alone or in combination with the defendants' other prior art references, "raises a substantial new question of patentability" that would be important to a reasonable examiner of the patent invalidity claims at issue.[10] (PTO Reexamination Order at fax page 8). If the defendants are correct about the importance of the Ray Thesis, they may suffer substantial prejudice if it is excluded. On the other hand, if the plaintiffs are correct that the thesis has limited legal utility, they will suffer little prejudice as a consequence of its inclusion.

### 4. *Potential Prejudice to Plaintiffs*

■ As discussed above, the Ray Thesis would have been added to the defendants' invalidity contentions at an earlier time but for the plaintiffs' failure to produce it during discovery. As an equitable matter, then, the plaintiffs may not be heard to argue prejudice as a result of the amendment.

### 5. *Availability of Continuance*

■ Currently, no date is set for trial, and it is possible to postpone the upcoming

---

**10.** I recognize that the decision to grant Seagate's request for patent reexamination does not establish a likelihood of patent invalidity. *Hoechst Celanese Corp. v. BP Chemicals Ltd.,* 78 F.3d 1575, 1584 (Fed.Cir.1996). However, the ultimate issue of patent invalidity is far beyond the scope of my current determination.

summary judgment motions. However, this litigation has been repeatedly stalled and "the enormous length of every step of the proceedings ... militate[s] against any more continuances." *Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*, 118 F.3d 955, 963 (2d Cir.1997). Allowing the amendment will therefore cause no further delay.

In sum, the defendants have justified their need to amend after the deadline, shown sufficient diligence, and established the potential importance of the Ray Thesis. The plaintiffs are precluded from arguing prejudice by their own failure to disclose the thesis earlier, and there is no reason for a continuance. On the basis of these factors, the defendants have established good cause to amend. Accordingly, their motion is granted.

### C. *Additional Discovery*

■ The defendants also seek substantial new fact and expert discovery concerning the Ray Thesis. (Seagate Memo at 2–3). However, in the eight years since this case was filed, the defendants have had ample opportunity to conduct fact and expert discovery concerning every aspect of the "Input Shaping" and "Quick and Quiet" technologies. There is simply no justification for allowing further discovery at this point in the proceedings. Furthermore, reopening discovery would prejudice the plaintiffs. Not only would substantial new discovery consume considerable amounts of the plaintiffs' time and money, it would further delay trial. The defendants' additional discovery requests are therefore denied, with the exception that the plaintiffs shall produce an unredacted copy of the Ray Thesis forthwith.

### D. *Cross–Motions to Strike Amendments to Expert Reports*

Both defendants have supplemented their expert reports to include opinions based upon the Ray Thesis and the plaintiffs have filed cross-motions to strike these additions. In a complicated patent case such as this, the utility of adding a prior art reference would be substantially reduced without expert analysis of its significance. Accordingly, the plaintiffs' cross-motions to strike expert reports are denied. However, although all parties may supplement their existing expert reports to include opinions on the Ray Thesis, discovery shall not be reopened to any greater extent. Expert opinions must be amended by December 19, 2008.

*Conclusion*

To summarize, the defendants' request to amend their invalidity contentions is granted. Their request for additional discovery is denied; however, the plaintiffs shall produce an unredacted copy of the Ray Thesis. The plaintiffs' cross-motions to strike the defendants' expert reports are also denied.

SO ORDERED.